UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
PARAMOUNT PARKS INC.                          :
                                              :
        Plaintiff,                            :      CASE NO.  07 CV 10595 (SHS)
                                              :
        v.                                    :
                                              :
LESTER NAIL                                   :
                                              :
        Defendant.                            :
---------------------------------------------------------x

## **MEMORANDUM OF LAW**

**I.     INTRODUCTION**

      Plaintiff Paramount Parks Inc. ("PPI") moves this Court for a protective order prohibiting Defendant Lester Nail from deposing Richard Kinzel, the Chief Executive Officer of Cedar Fair, L.P. ("Cedar Fair"), and its subsidiary company PPI.  PPI has already provided a sworn affidavit from Mr. Kinzel to opposing counsel testifying that he does not have any direct or unique knowledge relevant to the issues underlying this case; moreover, the depositions taken in this case have confirmed that Mr. Kinzel can offer absolutely nothing to the issue in dispute.

      The crux of this case is a straight forward contract interpretation case, with no key facts in dispute.  This action was brought by PPI against Defendant when it discovered that, unbeknownst to the company and contrary to Defendant's written Employment Agreement with PPI, Defendant had been working for another company for almost 8 months, all the while receiving his full pay and benefits for rendering exclusive services to PPI and remaining "willing, ready, and able" to render exclusive services to PPI.  The Court set a deposition cutoff date of April 30, and PPI is in the process of preparing its motion to the Court to interpret the contract as a matter of law.

In attempts to harass, annoy, and unduly burden PPI, Cedar Fair, and Mr. Kinzel, after taking the deposition of the individual with knowledge of all the pertinent issues in this case, Defendant is now seeking to depose Mr. Kinzel. However, as Mr. Kinzel's sworn affidavit evidences, and as was made crystal clear in the recent depositions, there is absolutely no legitimate basis for such deposition. Rather, Defendant has sought to take the deposition of such high level executive since this case began and without any regard to the facts at issue solely for purposes of harassing, annoying, driving up costs, and unduly burdening PPI and/or its parent company, Cedar Fair.

In fact, this issue was first addressed at the Pre-Trial Conference on February 29, 2008, at which time defense counsel represented to this Court that his basis for seeking to depose Mr. Kinzel (as well as the Chief Financial Officer, Peter Crage) was because they had conversations with the Defendant about the facts at issue in this case. (Transcript of February 29, 2008 Conference ("Feb. Conf.") at 11-12; 16-18)[1] Defendant's sworn deposition testimony, however, contradicts this representation. On the contrary, **Defendant has testified that he has had *no substantive conversation* with Mr. Kinzel**. (Deposition of Defendant Lester Nail ("Nail Dep.") at 83-87). This is consistent with Mr. Kinzel's sworn affidavit, which was provided to defense counsel subsequent to the February 29 conference.

This issue was discussed again at the status conference with the Court on April 25, 2008. Although the Court did not decide the issue as to whether Mr. Kinzel should be deposed at all in this litigation, the Court discussed the parameters of any such deposition, should it occur. Specifically, the Court indicated that the deposition, if any, should occur in Sandusky, Ohio (where Mr. Kinzel is located) and be limited to a few hours. Therefore, in the spirit of

---

[1] A copy of the transcript from the Court's February 29, 2008 Conference, along with copies of all other exhibits referenced herein, has been filed as an attachment to the Declaration of Jill S. Kirila, which is being filed contemporaneously with PPI's Motion for Protective Order and Attorneys' Fees and this Memorandum of Law.

compromise and to avoid unnecessarily involving the Court in this dispute, following the Court conference PPI offered to make Mr. Kinzel available for deposition specifically in accordance with the express limitations discussed by the Court should the Court allow Mr. Kinzel's deposition to go forward at all. Remarkably, defense counsel has refused this compromise, insisting to take the deposition in New York. Therefore, Plaintiff also moves this Court for attorneys' fees and costs incurred in making this motion.

As such, PPI requests that this Court grant PPI's motion for a protective order and prohibit Defendant from deposing Mr. Kinzel. In the alternative, PPI requests that the deposition, in accordance with the Court's indications at the status conference, take place in Sandusky, Ohio for no more than two hours.

## II.  RELEVANT FACTS

### A.  The Facts in This Case Are Largely Undisputed; Rather, the Dispute Revolves Around the Interpretation of Mr. Nail's Employment Agreement.

Defendant Nail, the former general counsel of PPI was subject to an Employment Agreement containing a term that ran from January 2006 until December 2007. It is undisputed that, directly following Cedar Fair's acquisition of PPI in the summer of 2006, effective August 1, 2006, PPI triggered the termination of employment without cause provisions of Defendant's Employment Agreement (as it did with other PPI executives). Defendant admits that PPI had the right to terminate his employment without cause at any time under the terms of the Employment Agreement. (Nail Dep. 70). That is not what this case is about. Rather, this case is about what happened after PPI kept its obligations under that Employment Agreement, continuing to pay Defendant's pay and benefits for the remainder of the term of the Agreement.

Defendant acknowledges that he continued to be under contract with PPI until December 2007. (Nail Dep. 106). Then in February 2007 Defendant obtained full-time employment as in-

house counsel with another company at a higher rate of pay. Despite his new employment, Defendant improperly continued to accept compensation and benefits from PPI in violation of his separate contractual obligations to remain "willing, ready, and able to render exclusive services" to PPI and to not engage in another occupation through December 2007.[2] The moment Defendant provided services to another company, he was no longer entitled to receive any further pay or benefits from PPI under the clear unambiguous terms of the Agreement. Accordingly, PPI is entitled to recover what it has paid to Defendant. Defense counsel has conceded to this Court that that there are no facts in dispute that would preclude the Court from deciding the contract issue as a matter of law.

### B. Defendant Has Sought to Depose Mr. Kinzel and Another PPI Executive Since This Litigation Began and Even Before Any Discovery Was Conducted.

On December 19, 2007, *one day* after filing his Answer and Counterclaim and before discovery had even properly commenced in this case,[3] Defendant issued Notices of Deposition of Mr. Kinzel and Peter Crage, the Chief Financial Officer of Cedar Fair and PPI.[4] At that time, PPI notified Defendant that it considered such Notices void under Rule 26(d) and improper Apex (top official) depositions. Then on February 11, 2008, shortly after the parties' Rule 26(f) conference, Defendant sent new Notices of Deposition for Mr. Kinzel and Mr. Crage. PPI's counsel informed Defendant that Mr. Kinzel and Mr. Crage had no personal knowledge relevant to the pertinent underlying facts of the claims or counterclaims and therefore any attempts to depose them was viewed as harassing, as the depositions would clearly be duplicative and burdensome.

---

[2] Defendant further misrepresented his employment status and current location to PPI, in an effort to continue improperly profiting from PPI.
[3] Under Fed. R. Civ. P. 26(d), "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)."
[4] On that same day, Defendant also issued Interrogatories, Requests for Production of Documents, and a Notice of Deposition for Craig Freeman, the Vice President of Administration.

**C.    Defense Counsel Represented to This Court That Defendant Had Specific Conversations with Mr. Kinzel Relevant to This Case – That Is False, According to the Sworn Deposition of Defendant.**

Counsel for the parties again discussed this issue at the Court's Pre-Trial Conference on February 29, 2008. At that time defense counsel represented the following basis for his insistence on deposing Mr. Kinzel and Mr. Crage: "Mr. Kinzel and Mr. Cragy [sic] had conversations with the defendant about the issues that we're discussing this morning." (Feb. Conf. 12) In fact, defense counsel later represented to this Court that Defendant had "specific" conversations with Mr. Kinzel, but refused to share with the Court or counsel the substance of those "conversations" that allegedly supported his demand to depose Mr. Kinzel.

> The Court:    Tell me about the – what you think your client had conversations with the two higher-ups that you wanted to –
>
> Mr. Weber:    **He did – he did have conversations, Your Honor***, very specific ones* **with the individuals that we've noticed for depositions**.
>
> The Court:    Okay. You've noticed their depositions already?
>
> Mr. Weber:    Yes, sir.
>
> The Court:    Okay. What I want you to do then is to send me a – and if you feel you've, you know, run the string in terms of talking about this, send me a letter and it will be a letter application, a motion for protective order against the depositions and tell me why that they have no knowledge, they had conversations, and find out from Mr. Weber what – the reasons why he thinks they have so you can address it up front, and then Mr. Weber respond in a letter, I'll accept those representations as representations of your client. If you want to attach an affidavit of your client, you're certainly entitled to but I still will accept if you don't want to go through that –
>
> Mr. Weber:    Well, Your Honor –
>
> The Court:    -- I'll accept what you say in the letter. Go ahead.
>
> Mr. Weber:    I appreciate that you're saying, **but I'd like to take these witnesses' deposition first and – before I necessarily say – what my client is going to say. I'd like to pin them down before they hear what my client is going to say.** That's my right –

- 5 -

| | |
|---|---|
| The Court: | Okay.  But here's – I understand that also, but they're going to move for a protective order, and their motion is going to be these people have absolutely nothing to say about this, and they're mucks-a-mucks, and – I don't' mean that pejoratively.  I mean, you know, they are major officers of a public – public corporation, and there are 57,000 employees who sue them, you know, they're busy men.  That's what you're going to be saying, and they shouldn't have to come away from what they do for you.  You can in part undercut that in your response if you want and say we'll go there and we'll go to their suites so their time isn't taken.  Whatever it is.<br><br>But, if she says they have absolutely no knowledge, that's pretty powerful to me and you're going to have to tell me why you think they do have some knowledge, the extent – |
| Mr. Weber: | I'm fine with that, Your Honor. |
| The Court: | -- that you want to disclose the specifics is up to you, but if she says they're higher-ups, they're busy people, they have nothing to do with this, they took it only because the contract came with a company that they purchased.  Sounds good to me unless you tell me otherwise. |
| Mr. Weber: | I have no problem with that, Your Honor.  **My objection is that I had to somehow disclose what my client was going to say first.  I don't have a problem with them making a motion and saying in a sworn affidavit I know nothing.  Let them take that position.  Fine with me.  And if they take that position and they say absolutely, we had no conversation with the defendant, no knowledge of this case, nothing whatsoever, then I'll reconsider the affidavit – I want to see that in an affidavit.** |

(Feb. Conf. 16-18) (emphasis added)

Subsequent to the February 29 conference it has become abundantly clear why defense counsel did not want to reveal the substance of the "conversations" that Mr. Kinzel had with Defendant – **because there were *none*.**

In an effort to resolve the issue, PPI agreed to and did provide opposing counsel with affidavits from Mr. Kinzel and Mr. Crage attesting to the fact that they have no personal or unique knowledge related to the pertinent facts underlying the claims and counterclaims in this case.  Such sworn affidavits were provided to Defendant's counsel on March 10, 2008, with a

request that counsel for Defendant notify PPI's counsel as soon as possible if Defendant was not going to withdraw the Notices for Mr. Kinzel and Mr. Crage. (See March 10, 2008 E-Mail with Attached Affidavits; Affidavit of Richard Kinzel ("Kinzel Aff."); Affidavit of Peter Crage ("Crage Aff.")). ***The affidavits clearly evidence that neither Mr. Kinzel nor Mr. Crage have direct knowledge relevant to any of the disputed or pertinent issues in this case***.

Counsel for PPI heard nothing further from defense counsel regarding depositions of Mr. Kinzel or Mr. Crage until the week of April 14, 2008, prior to the deposition of Mr. Freeman, at which time defense counsel indicated that PPI should plan to move for a protective order because Defendant intended to depose Mr. Kinzel and Mr. Crage. Since then, Defendant has indicated an intention to depose Mr. Kinzel only.

### D.  Mr. Kinzel Has No Relevant or Unique Knowledge.

Contrary to defense counsel's claimed basis for needing to depose the CEO of Cedar Fair and PPI, Defendant testified at his deposition that **he has *never* had any personal substantive conversations with Mr. Kinzel**. Rather, the only interaction he ever had was (a) Defendant was one of many Vice Presidents on a general conference call with Mr. Kinzel regarding notifying PPI employees of Cedar Fair's acquisition of PPI; and (b) Defendant "may" have met Mr. Kinzel at a management presentation to Cedar Fair prior to the transaction or on a tour (at which time Defendant admits they would not have had any substantive conversation whatsoever). (Nail Dep. 82-87). Mr. Kinzel does not know Defendant and had no personal communications with him on anything, let alone the matters in dispute in this case. (Kinzel Aff. ¶¶ 3-4 ). Mr. Freeman is the individual who had all interactions with Defendant, and again, he was deposed. (See e.g., Freeman Dep. 142, 146).

Simply, consistent with Mr. Kinzel's affidavit, Defendant's limited "interactions" with Mr. Kinzel do not evidence the fact that Mr. Kinzel has any knowledge about the pertinent facts in this case. Defendant has put forth no compelling reason why Mr. Kinzel, the very top official of Cedar Fair and PPI, should be subjected to deposition in this case. Accordingly, Defendant's continued demand to depose Mr. Kinzel can be viewed as nothing but an improper and unnecessary fishing expedition intended to harass PPI, Cedar Fair and/or Mr. Kinzel and unnecessarily drive up costs.

Now, Defendant has indicated that the "knowledge" he believes Mr. Kinzel has relates primarily to Defendant's employment at PPI,[5] Cedar Fair's purchase of PPI,[6] the termination of Defendant's employment at PPI,[7] PPI's lack of need for Defendant's services, and PPI's reasons for suing Defendant.[8] Yes, Defendant's counsel did question Mr. Freeman, Vice President of Administration for PPI, in his deposition on April 23, 2008, regarding Mr. Kinzel's role in these areas, and indeed, Mr. Kinzel does have some knowledge about them – he is, afterall, the CEO and the person with ultimate authority on several of these issues. **However, *none* of these areas involve any disputed issues or facts in this case, i.e. whether Defendant breached his Employment Agreement or otherwise acted improperly in receiving payments from PPI after securing alternative employment.** In fact, the record clearly demonstrates that the only information Mr. Kinzel has about this dispute comes from Mr. Freeman's and counsel's status updates. (Freeman Dep. 12-13; Kinzel Aff. ¶¶5-7)

---

[5] Defendant was terminated within days of the closing and admits he never had any substantive discussions with Mr. Kinzel regarding anything, let alone his employment. (Nail Dep. 83-86)

[6] It is undisputed that Cedar Fair purchased the stock of PPI and inherited the PPI executive employment agreements. This is not at issue in this case. Moreover, Mr. Freeman gave more than sufficient testimony on this subject.

[7] Defendant admits that PPI had the right to trigger the termination without cause provisions of his Employment Agreement at any time; this is not an issue in the case. (Nail Dep. 70)

[8] PPI sued Mr. Nail because he breached his Employment Agreement and acted improperly when he continued to take pay and benefits from PPI. Mr. Kinzel's role in approving suit or in Mr. Freeman reporting to him on the status of the litigation is not at all relevant to the claims or counterclaims in this actions.

Further, specifically regarding the use of Mr. Nail's services, Defendant hopes that Mr. Kinzel can "bolster" his claim that PPI did not intend to use Defendant's services. Defendant's counsel makes much of the fact that Mr. Kinzel was the signatory on the letter informing Defendant that his services were not needed, triggering the termination without cause provisions of Defendant's Employment Agreement, and reminding Defendant of his continuing obligations under the Employment Agreement. (See July 27, 2006 letter to Mr. Nail).[9] This is a red herring. First, PPI does not dispute that it sent the letter, and Defendant admits that no one at PPI or Cedar Fair told him anything else regarding using or needing his services in connection with or after that letter. (Nail Dep. 95-96, 104) Moreover, and even more significantly, whether or not PPI intended to use Mr. Nail's services is irrelevant as it is undisputed that PPI had the right to request or not request Defendant's services at any time in the remainder of the term provided it continued his pay or benefits. (Nail Dep. 104-105; see also Employment Agreement 7(c) "[n]othing herein shall obligate Paramount to utilize Executive's services"). Further, the record clearly establishes that Mr. Freeman, who has been deposed, was the individual who determined that Defendant's services were no longer needed. (Freeman Dep. 88-89: Q: "Who determined that Mr. Nail's services were no longer needed? A: I did.) If it will avoid a wasteful deposition, PPI will stipulate that it did not request or determine a need to use Defendant's services at any point following the July 27, 2006 letter through October 2007, when it learned of Defendant's breach and misconduct.

---

[9]In any event, as testified to by Mr. Freeman, the letter was drafted by counsel with input from Mr. Freeman (with no involvement from Mr. Kinzel, who merely signed it). (Freeman Dep. 93-95).

### III. LAW AND ANALYSIS

#### A. The Deposition Of Mr. Kinzel Would Be Harassing, Burdensome, And Would Not Lead To The Discovery Of Relevant Information.

Rule 26(c) of the Federal Rules of Civil Procedure permits a party to seek a protective order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense" in discovery. While generally depositions can be taken of parties, "discovery is not boundless, and a court may place limits on discovery demands that are unreasonably cumulative or duplicative." Six West Retail Acquisition v. Sony Theatre Management Corp., 203 F.R.D. 98, 102 (S.D.N.Y. 2001). Deposing a person with no personal knowledge of the facts in dispute in this litigation would be unduly burdensome.

Courts have repeatedly frowned upon attempts to depose high level corporate executives who have no personal knowledge of the pertinent events in dispute, commonly referred to as the "Apex" doctrine. The Apex doctrine generally holds that, before a plaintiff is permitted to depose a defendant company's high-ranking corporate officer (an "Apex" officer), the plaintiff must show that the individual whose deposition is sought actually possesses ***genuinely relevant knowledge which is not otherwise available through another witness or other less intrusive discovery***. The Apex doctrine was developed to combat the aggressive use of coercive deposition discovery against corporations by requiring that depositions of highest-ranking corporate officials should not occur absent a showing of specific, unique knowledge on the part of the targeted deponent, and an initial attempt to obtain relevant, necessary discovery through less intrusive means.

New York federal courts have consistently recognized that the oral deposition of a high level corporate executive should not be freely granted when the subject of the deposition will be only remotely relevant to the issues of the case. Harris v. Computer Associates Intern., Inc., 204

F.R.D. 44 (E.D.N.Y. 2001).  "Depositions of high level corporate executives may be duplicative, cumulative and burdensome where the person sought to be deposed has no personal knowledge of the events in dispute. . . . ***When a vice president can contribute nothing more than a lower level employee, good cause is shown to not take the deposition***."  Id. at 46 (emphasis added) (denying motion to depose Chairman and Chief Executive Officer) (citing Baine v. General Motors Corp., 141 F.R.D. 332, 333-35 (M.D. Ala. 1991) (denying the plaintiff's request to depose a corporate vice president who lacked unique personal knowledge of the issues); Porazzi Co. v. The Mormaclark, 16 F.R.D. 383, 383 (S.D.N.Y. 1951)).  "The court should be alert to see that the liberal deposition procedure provided in the Federal Rules is used only for the purpose for which it is intended and is not used as a litigation tactic to harass the other side or cause it wasteful expense."  Armstrong Cork Co. v. Niagara Mohawk Power Corp., 16 F.R.D. 389, 390-91 (S.D.N.Y. 1954).

Similarly, in Consolidated Rail Corp. v. Primary Indus. Corp., 1993 U.S. Dist. LEXIS 12600 (S.D.N.Y. 1993), plaintiff moved for a protective order precluding the depositions of the Chief Executive Officer, President and Chairman, the Vice President of Labor Relations and the Senior Vice President of Operations.  Id. at *1-2.  Each of these individuals submitted "an affidavit attesting that he ha[d] no personal knowledge of the facts underlying the claims and counterclaims in these cases except for what he may have learned from other Conrail employees."  Id. at *2.  The court deferred depositions of the three executives until the defendant could demonstrate that they have "some ***unique knowledge pertinent to the issues in these cases.***"  Id. at *3 (emphasis added).  In so holding, the Court stated that, "***permitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent toll for harassment in litigation.  Accordingly, where other witnesses have the same***

- 11 -

***knowledge, it may be appropriate to preclude a redundant deposition of a highly-placed executive***." Id. at *2-3 (emphasis added). See also Harris, 204 F.R.D. at 46 (denying motion to depose Chairman and Chief Executive Officer of the defendant company because the motion was untimely and the executive had no direct knowledge of underlying facts and therefore his deposition would be burdensome and repetitive); Armstrong Cork Co., 16 F.R.D. 389 (granting motion to vacate deposition notices of certain named officers and directors of the plaintiff corporation where none of the noticed individuals had knowledge of facts related to the suit).

Here, like in Consolidated Rail, the executive sought to be deposed has already submitted a sworn affidavit attesting to the fact that he has no personal knowledge of the pertinent facts underlying the claims and counterclaims except what he may have learned from other officers and employees of PPI. See Kinzel Aff. at ¶¶ 2-7. Defendant himself admits that, contrary to the assertions of his counsel, he had no substantive conversations with Mr. Kinzel whatsoever, let alone about his Employment Agreement. Furthermore, Mr. Kinzel has likewise attested that, although he is "generally aware that PPI continued to pay Mr. Nail compensation and benefits under the terms of his Employment Agreement for some time after his employment with PPI ended" he does not have any "direct or unique knowledge involving the details of any such payments." See Kinzel Aff. at ¶5. Rather, any relevant knowledge that Mr. Kinzel may have about Defendant "is indirect and could be acquired though lower-ranking officers, employees, or agents of PPI." See Kinzel Aff. at ¶7.

Defendant has already deposed a high-level executive with personal knowledge of the facts underlying the claims and counterclaims (and, in fact, the primary source of any information known by Mr. Kinzel). On April 23, 2008, Defendant deposed Craig Freeman, Vice President of Administration for PPI. Mr. Freeman is another high-level executive, who, unlike

Mr. Kinzel, actually had interactions with Defendant regarding his post-termination compensation and his subsequent employment with Denny's.  Indisputably, Mr. Freeman had knowledge and testified on all pertinent topics.   Defendant cannot identify one issue **in dispute** upon which Mr. Kinzel could offer **any** first hand testimony, let alone any unique testimony.  Accordingly, any deposition of Mr. Kinzel would offer no testimony relevant to the disputed issues in this case.  Therefore, Defendant should be prevented from deposing Mr. Kinzel because he has not and cannot show that he has any unique *relevant* testimony.  See Consolidated Rail Corp., 1993 U.S. Dist. LEXIS 12600 at *2-3; see also Juliano v. ITT Corp., 1991 U.S. Dist. LEXIS 333 (D.N.J. Jan. 2, 1991); Ronald A. Katz Technology Licensing v. Verizon Communications, Inc., 2002 U.S. Dist. LEXIS 19691 (E.D. Pa. Oct. 16, 2002).

Moreover, Defendant's insistence on deposing Mr. Kinzel, despite receiving his affidavit attesting to the fact that he has no unique relevant knowledge, and despite Mr. Freeman's testimony regarding the subject matters about which Mr. Kinzel would have knowledge (none of which are topics in dispute), evidences the true intentions behind such deposition -- to harass and burden Mr. Kinzel, PPI, and/or Cedar Fair and drive up the litigation costs for PPI in what should be a straight forward judicial determination regarding essentially the clear terms of a contract.  Mr. Kinzel is a high-level executive with a multitude of responsibilities at Cedar Fair, a publicly traded company, and its subsidiary companies, including PPI.  Accordingly, it would unduly burden Mr. Kinzel to be deposed in this litigation when he has no personal knowledge relevant to the disputed issues in this action.  See Kinzel Aff. at ¶8.  Further, such deposition would delay this case (this Court ordered that depositions be completed by April 30, 2008) and drive up litigation costs unnecessarily for PPI, who would be forced to prepare, pay for, and undertake an

unproductive deposition, especially where PPI believes that the contract issue can be decided right now as a matter of law by the Court without need for any other discovery.[10]

In the alternative, at a minimum, as this Court indicated at the status conference on April 25, 2008, Mr. Kinzel's deposition should occur in Sandusky, Ohio (where Mr. Kinzel and Cedar Fair are located) and be limited to a few hours.[11]  PPI requests that any such deposition be limited to a maximum of 1-2 hours.  See In re Bridgestone/ Firestone, Inc., Tires Products Liability Litigation, 205 F.R.D. 535 (S.D. Ind. 2002) (limiting deposition permitted in order to avoid the possibility of numerous, repetitive, harassing, or abusive depositions).

### B. PPI Is Entitled To Attorneys' Fees And Costs.

If this Court grants PPI's motion, an award of attorneys' fees and related costs is appropriate.  Fed. R. Civ. P. 26(c) and 37(a)(4).  The expenses and sanctions authorized by Rule 37(a)(4) were intended to deter the behavior exhibited by defense counsel – burdensome and harassing discovery tactics.  Defendant's continued insistence on deposing Mr. Kinzel despite his sworn affidavit, the discovery done in this case, and in refusing PPI's compromise has caused PPI to incur unnecessary legal fees and expenses, including those related to the preparation of this Motion.  For these reasons, PPI respectfully requests an award of attorneys' fees and related costs, including those incurred in preparing this Motion, and any other relief that this Court deems appropriate.

---

[10] PPI is in the process of preparing its motion for judgment on the pleadings/summary judgment.
[11] Any position by Defendant to take the deposition in New York would only confirm the harassing and cost-increasing motive of Defendant.  Further, appearing for a deposition in New York would be unduly burdensome on Mr. Kinzel's time and cost prohibitive, particularly, given the limited and remote information Mr. Kinzel has regarding this matter.

IV.     **CONCLUSION**

For all of the foregoing reasons, PPI respectfully requests that this Court issue a protective order preventing the deposition of Richard Kinzel and granting costs and attorneys' fees incurred by PPI.

Dated:  New York, New York
        May 2, 2008

                                        Respectfully submitted,

                                        **SQUIRE, SANDERS & DEMPSEY L.L.P.**


                                        By: /s/ Jill S. Kirila

                                        Steven Skulnik (SS-7821)
                                        350 Park Avenue
                                        New York, New York 10022
                                        (212) 872-9800

                                        Jill S. Kirila (Ohio # 0068593)
                                        Lori Maiorca Zancourides (Ohio # 0076342)
                                        (pro hac vice admission)
                                        **SQUIRE, SANDERS & DEMPSEY L.L.P.**
                                        1300 Huntington Center
                                        41 South High Street
                                        Columbus, Ohio 43215

                                        Attorneys for Plaintiff
                                        Paramount Parks Inc.