LITTLER MENDELSON, P.C.
A. Michael Weber (AW-8760)
Michael P. Pappas (MP-6716)
885 Third Avenue
New York, New York 10022
(212) 583-9600

Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

PARAMOUNT PARKS, INC.,

                Plaintiff,

        -against-                     Case No. 07 Civ. 10595 (SHS) (MJD)

LESTER NAIL,

                Defendant.
_____

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER AND ATTORNEYS' FEES, AND IN SUPPORT OF THE CROSS-MOTION FOR SANCTIONS AND ATTORNEYS' FEES**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................ 1

SUMMARY OF ARGUMENT ................................................................... 1

ARGUMENT ............................................................................................. 6

I.   PPI's MOTION FOR A PROTECTIVE ORDER PRECLUDING
     RICHARD KINZEL'S DEPOSITION SHOULD BE DENIED ........................... 6

     A.  The Federal Rules Provide For Liberal Discovery ........................... 6

     B.  Preclusion of a Deposition is a Disfavored Remedy That is Invoked
         Only in Extraordinary Circumstances ........................................... 7

     C.  PPI Has Not Shown That Mr. Kinzel Lacks Relevant Knowledge ................. 8

     D.  PPI's Allegations of Bad Faith and "Harassment" Are Baseless ................. 15

II.  THE CONDITIONS PPI SOUGHT TO IMPOSE ON MR. KINZEL'S
     DEPOSITION WERE INAPPROPRIATE .......................................................... 17

     A.  Mr. Kinzel Should Be Required to Appear in PPI's Chosen Forum,
         New York ...................................................................................... 17

     B.  There Is No Basis For Limiting Mr. Kinzel's Deposition to Two Hours ...... 19

III. DEFENDANT'S CROSS-MOTION FOR SANCTIONS AND
     ATTORNEYS' FEES SHOULD BE GRANTED ................................................ 19

     A.  PPI and Mr. Kinzel Should Be Sanctioned Due To Their False
         Representations Regarding Mr. Kinzel's Knowledge ................................. 19

     B.  PPI Should Be Ordered to Reimburse Mr. Nail For the Attorneys' Fees
         He Incurred Opposing PPI's Motion .......................................................... 21

CONCLUSION ........................................................................................... 22

i.

# TABLE OF AUTHORITIES

**Page(s)**

CBS, Inc. v. Ahern, 102 F.R.D. 820 (S.D.N.Y. 1984)........................................ 8

Clem v. Allied Van Lines Int'l Corp., 102 F.R.D. 938 (S.D.N.Y. 1984) ......................... 17

Consolidated Rail Corp. v. Primary Indus. Corp., 1993 U.S. Dist. LEXIS 12600
   (S.D.N.Y. Sept. 10, 1993)............................................................. 8

Daly v. Delta Airlines, Inc., 1991 U.S. Dist. LEXIS 2762 (S.D.N.Y. Mar. 7, 1991)....... 18

Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357 (2d Cir. 1991) ................................ 7

Dubai Islamic Bank v. Citibank, N.A., 2002 U.S. Dist. LEXIS 9794
   (S.D.N.Y. May 31, 2002)............................................................... 17

Estee Lauder, Inc. v. Fragrance Counter, Inc., 189 F.R.D. 269 (S.D.N.Y. 1999) .............. 6

Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
   756 F.2d 230 (2d Cir. 1985) .......................................................... 6

General Star Indemnity Co. v. Platinum Indemnity Ltd., 210 F.R.D. 80
   (S.D.N.Y. 2002) ............................................................... 6, 7, 8

Investment Properties Int'l, Ltd. v. IOS Ltd., 459 F.2d 705 (2d Cir. 1972) ...................... 7

Ladson v. Ulltra East Parking Corp., 164 F.R.D. 376 (S.D.N.Y. 1996)............................. 7

Martin v. Valley Nat'l Bank of Arizona, 140 F.R.D. 291 (S.D.N.Y. 1991)....................... 7

Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Maryland, 122 F.R.D. 447
   (S.D.N.Y. 1988)....................................................................... 7

Naftchi v. New York Univ. Med. Ctr., 172 F.R.D. 130 (S.D.N.Y. 1997).......................... 7

Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978)................................................. 6

Ratliff v. Davis Polk & Wardwell, 354 F.3d 165 (2d Cir. 2003)........................................ 6

Sandstrom v. Rosa, 1996 U.S. Dist. LEXIS 11923 (S.D.N.Y. Aug. 16, 1996)................. 8

Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp., 203 F.R.D. 98
   (S.D.N.Y. 2001)....................................................................... 8

Speadmark, Inc. v. Federated Dep't Stores, Inc., 176 F.R.D. 120 (S.D.N.Y. 1997) ...... 7, 8

# TABLE OF AUTHORITIES

**Page(s)**

The Alvin Schwartz, M.D., P.A. Employer/Employee Profit Sharing Plan
    v. O'Grady, 1988 U.S. Dist. LEXIS 15566 (S.D.N.Y. Dec. 21, 1988) ................. 17, 18

Tri-Star Pictures, Inc. v. Unger, 171 F.R.D. 94 (S.D.N.Y. 1997)....................................... 6

## INTRODUCTION

Defendant Lester Nail, by his attorneys, Littler Mendelson, P.C., respectfully submits this memorandum of law in opposition to PPI's motion for a protective order and attorneys' fees, and in support of his cross-motion for attorneys' fees and sanctions.

## SUMMARY OF ARGUMENT

### I.    Mr. Kinzel Has Personal Knowledge of Relevant Facts

PPI seeks the extraordinary and disfavored remedy of a protective order barring the deposition of a fact witness.  PPI's motion must be denied because it has not satisfied its heavy burden of establishing that the deponent, Richard Kinzel, has no knowledge of relevant facts.   To the contrary, both the documentary and testimonial evidence demonstrate unequivocally that Mr. Kinzel has intimate personal knowledge of the facts and circumstances relevant to this action.  According to the sworn testimony of Craig Freeman, PPI's Vice President of Administration, Mr. Kinzel was directly involved in and responsible for virtually all of the actions taken and decisions made regarding Mr. Nail and his employment agreement with PPI, including, *inter alia*:

- PPI's termination of Mr. Nail's employment without cause;

- PPI's determination that Mr. Nail's services were no longer needed;

- PPI's communications with Mr. Nail in which it notified him that his services would not be required at any time after August 1, 2006, and that he was free to cease performing work for PPI;

- PPI's failure to request or demand Mr. Nail's services after his termination;

- PPI's determination that it would never invoke the exclusive services provision of Mr. Nail's employment agreement, and that it had no intention of availing itself of Mr. Nail's services;

- PPI's interpretation of Mr. Nail's employment agreement, including, *inter alia*, the erroneous determination that Mr. Nail's employment by Denny's forever precluded him from performing services for PPI;

- Mr. Nail's express written tender of performance to PPI in November 2007, and PPI's decision to reject that tender;

- PPI's treatment of other executives who had the same or similar employment agreement as Mr. Nail and who obtained other employment after their termination by PPI;

- PPI's conclusion that Mr. Nail acted in bad faith and committed intentional fraud by failing to disclose certain facts to PPI; and

- PPI's decision to cut off Mr. Nail's contractual payments and remove monies from his personal checking account without authorization.

Thus, this is not the case where a party is seeking to depose a CEO who was above the fray and had no personal involvement in the matters at issue. Rather, based on PPI's own testimony, Mr. Kinzel was the decision-maker and was directly involved in all of PPI's dealings with Mr. Nail, including, *e.g.*, the utilization of (or failure to utilize) Mr. Nail's services, the application and interpretation of Mr. Nail's employment agreement, and the wrongful conversion of monies belonging to Mr. Nail. Indeed, it was Mr. Kinzel who personally notified Mr. Nail in a signed writing that his services would no longer be needed by PPI at any time after August 1, 2006.

In short, PPI is suing Mr. Nail for a large sum of money and is also seeking punitive damages against him based on alleged intentional fraud. Mr. Kinzel clearly has personal knowledge of matters relevant to PPI's claims (as well as Mr. Nail's counterclaims), and it would be erroneous and unjust to bar Mr. Nail from deposing him. The fact that Mr. Kinzel is a high-level executive with a busy schedule does not make

him immune from discovery, and is not a basis for foreclosing an otherwise proper deposition.

## II.    Defendant Proceeded In Good Faith and Is Not Seeking to "Harass" Mr. Kinzel

PPI's allegation that Mr. Nail has sought to "harass, annoy, and unduly burden" Mr. Kinzel by precipitously deposing him is completely baseless.  Mr. Nail noticed Mr. Kinzel for deposition early in this litigation because it was apparent that Mr. Kinzel was personally involved in Mr. Nail's termination, the decisions regarding whether to utilize Mr. Nail's services, and the application and interpretation of Mr. Nail's employment agreement.  As mentioned, it was Mr. Kinzel who personally notified Mr. Nail in writing that his services would not be required at any time after August 1, 2006.

Nevertheless, based on representations of PPI's attorney that Mr. Kinzel lacks personal knowledge of any relevant facts, as well as an affidavit from Mr. Kinzel in which he swore under oath that he has no personal knowledge regarding this case, Mr. Nail agreed to defer taking Mr. Kinzel's deposition pending further discovery.  Mr. Nail subsequently agreed not to depose Mr. Kinzel if PPI would provide assurances that it would not call Mr. Kinzel to testify at trial.  However, PPI refused to so stipulate.  Even so, Mr. Nail still agreed not to seek Mr. Kinzel's deposition until after he had deposed a lower-level official, Mr. Freeman.  It was only *after* Mr. Freeman testified regarding Mr. Kinzel's intimate personal knowledge and involvement in this matter that Mr. Nail determined that it would be necessary to depose Mr. Kinzel in order to effectively defend against PPI's claims.

In short, Mr. Nail's initial deposition notice to Mr. Kinzel had a sound, good faith basis, and Mr. Nail took all reasonable steps to avoid deposing Mr. Kinzel, including; (i)

relying on the representations of PPI's counsel and Mr. Kinzel, which turned out to be false; (ii) offering to forego Mr. Kinzel's deposition if PPI would agree not to call him as a witness, which PPI refused; and (iii) first deposing a lower-level official, who testified that Mr. Kinzel was directly and personally involved in relevant matters, and who had a poor recollection of events and was unable to provide complete testimony. PPI has failed to demonstrate that Mr. Kinzel's deposition is being sought for an improper purpose, or that Mr. Nail has failed to seek such discovery through less-intrusive means.

### III.    PPI Should Be Ordered to Produce Mr. Kinzel in New York

It is well-established that a non-resident plaintiff who chooses this district as its forum must appear for deposition here absent compelling circumstances. Here, PPI chose to sue Mr. Nail in the Southern District of New York, and is therefore required to produce its corporate representative for deposition here. Contrary to its representations to the Court, PPI has provided no evidence whatsoever that it would be an extreme hardship for Mr. Kinzel to travel from Ohio to New York, nor has it alleged any other compelling circumstances that would warrant departure from the rule requiring PPI to appear for deposition in the forum it chose. Indeed, because Mr. Nail has agreed to limit Mr. Kinzel's deposition to no more than four hours, any burden would be minimal and Mr. Kinzel would be able to return to Ohio by late afternoon.

All of the other non-resident witnesses in this action have been deposed in New York, including Mr. Freeman and Mr. Nail, and PPI has provided no facts justifying an exception for Mr. Kinzel. Certainly, PPI, a large corporation, is easily able to sustain the additional expense of appearing in New York, the forum in which it chose to sue.

Moreover, PPI has not established any basis for arbitrarily limiting the length of Mr. Kinzel's deposition to a mere two hours. The four hours proposed by Mr. Nail is a much more reasonable length given the extent of Mr. Kinzel's involvement in virtually every aspect of this matter.

**IV.    PPI Should Be Sanctioned Due To Its False Representations Regarding Mr. Kinzel's Knowledge, and Ordered to Pay Mr. Nail's Attorneys' Fees**

It is troubling, to say the least, that the representations made by PPI and its attorneys regarding Mr. Kinzel's purported lack of knowledge have been shown to be false. PPI's counsel repeatedly represented to both the Court and Mr. Nail that Mr. Kinzel has no personal knowledge regarding this action. Significantly, Mr. Kinzel himself submitted a sworn affidavit to that effect. Mr. Nail relied on those representations in refraining from deposing Mr. Kinzel. However, as the Court will observe after reviewing the testimony of PPI's own witness, Mr. Freeman, it is clear that Mr. Kinzel does indeed have such knowledge. It can only be concluded that the representations and sworn statements to the contrary were made in bad faith and for the purpose of obstructing Mr. Nail's attempts to conduct legitimate discovery. As such, sanctions are warranted against PPI and Mr. Kinzel an amount the Court deems appropriate given the serious nature of their conduct. Furthermore, because PPI's motion for a protective order lacks a reasonable basis, PPI should be ordered to reimburse Mr. Nail for the attorneys' fees expended responding to PPI's motion.

## ARGUMENT

### I. PPI'S MOTION FOR A PROTECTIVE ORDER PRECLUDING RICHARD KINZEL'S DEPOSITION SHOULD BE DENIED

#### A. The Federal Rules Provide For Liberal Discovery

The "discovery regime set out by the Federal Rules of Civil Procedure is an extremely permissive one to which courts have long accorded a broad and liberal treatment to effectuate their purpose." Ratliff v. Davis Polk & Wardwell, 354 F.3d 165, 169 (2d Cir. 2003) (citations and internal quotation marks omitted). See also Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 756 F.2d 230, 236 (2d Cir. 1985) (rules governing discovery should be interpreted broadly).

The Federal Rules provide, in relevant part, that parties "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party…. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). See also General Star Indemnity Co. v. Platinum Indemnity Ltd., 210 F.R.D. 80, 82 (S.D.N.Y. 2002).

"Relevance for discovery purposes is an extremely broad concept which 'has been construed broadly to encompass any matter that bears on, or reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'" Tri-Star Pictures, Inc. v. Unger, 171 F.R.D. 94, 101 (S.D.N.Y. 1997) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). The "concept of relevance … is not limited by considerations of evidentiary admissibility, but rather is broad enough to afford parties liberal access to evidence in advance of trial." Estee Lauder, Inc. v. Fragrance Counter, Inc., 189 F.R.D. 269, 274 (S.D.N.Y. 1999).

Thus, "[i]t is well-settled within this Circuit that 'any possibility' that the sought-after information may be relevant to the subject-matter of the action will satisfy Rule 26(b)(1)'s requirements." Id. (citing Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991)). See also Ladson v. Ulltra East Parking Corp., 164 F.R.D. 376, 378 (S.D.N.Y. 1996) ("All that must be shown is that the discovery requested possibly might be relevant, or is reasonably calculated to lead to the discovery of admissible evidence.") (citations omitted); Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Maryland, 122 F.R.D. 447, 449 (S.D.N.Y. 1988) (same).

**B.    Preclusion of a Deposition is a Disfavored Remedy That is Invoked Only in Extraordinary Circumstances**

"In light of the broad scope of pre-trial discovery, the Second Circuit has held that 'an order to vacate a notice of taking [a deposition] is generally regarded as both unusual and unfavorable.'" General Star Indemnity Co., 210 F.R.D. at 82 (quoting Investment Properties Int'l, Ltd. v. IOS Ltd., 459 F.2d 705, 708 (2d Cir. 1972)). See also Speadmark, Inc. v. Federated Dep't Stores, Inc., 176 F.R.D. 120, 132 (S.D.N.Y. 1997) (order barring a party from taking a deposition is "most extraordinary relief."); Naftchi v. New York Univ. Med. Ctr., 172 F.R.D. 130, 132 (S.D.N.Y. 1997) ("[I]t is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition."); Martin v. Valley Nat'l Bank of Arizona, 140 F.R.D. 291, 314 (S.D.N.Y. 1991) ("An order precluding the deposition of a witness is of course the exception rather than the rule in federal court.").

Although discovery is not boundless, a witness with relevant knowledge will not be excused from being deposed merely because he is a high-ranking corporate official. It is well-established that "highly-placed executives are not immune from discovery," and

7

"the fact that the witness has a busy schedule is simply not a basis for foreclosing otherwise proper discovery." See, e.g., General Star Indemnity Co., 210 F.R.D. at 83 (denying motion to preclude depositions of president and CEO of large insurance company); Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp., 203 F.R.D. 98, 102 (S.D.N.Y. 2001) (denying motion to preclude deposition of CEO of Sony Corporation); Sandstrom v. Rosa, 1996 U.S. Dist. LEXIS 11923, *12-14 (S.D.N.Y. Aug. 16, 1996) (denying motion to preclude deposition of Governor Cuomo); CBS, Inc. v. Ahern, 102 F.R.D. 820, 822 (S.D.N.Y. 1984) (denying motion to preclude deposition of President of CBS Records).

Moreover, even where a high-ranking corporate officer denies personal knowledge of the issues at hand, this claim "is subject to testing by the examining party." See Six West Retail Acquisition, Inc., 203 F.R.D. at 102; Consolidated Rail Corp. v. Primary Indus. Corp., 1993 U.S. Dist. LEXIS 12600, *2 (S.D.N.Y. Sept. 10, 1993).

Here, Mr. Kinzel has relevant and discoverable knowledge regarding this matter, and the fact that he happens to be a CEO does not entitle him to special treatment or excuse him from being deposed. See General Star Indemnity Co., 210 F.R.D. at 83.

### C.    PPI Has Not Shown That Mr. Kinzel Lacks Relevant Knowledge

As the party seeking to preclude discovery, PPI has the burden of demonstrating that the deposition of Mr. Kinzel would not lead to the discovery of relevant information. General Star Indemnity Co., 210 F.R.D. at 82; Speadmark, 176 F.R.D. at 118. Not only has PPI failed to satisfy that burden, but the evidence conclusively demonstrates that Mr. Kinzel possesses discoverable knowledge. For example:

(1)    Mr. Kinzel provided Mr. Nail with written notice that his employment was being terminated without cause and that Mr. Nail's services would no longer be needed "after August 1, 2006." (Deposition of Craig Freeman dated April 23, 2008 ("Freeman Dep."), at 94-97, Exh. C.)[1] Mr. Kinzel reviewed this notice, signed it, and discussed it with members of PPI management before it was sent. (Id.) In light of PPI's claim that Mr. Nail breached his employment contract and intentionally defrauded PPI by allegedly not remaining available to render services after his termination, Mr. Nail is entitled to examine Mr. Kinzel regarding the meaning and intent of his statement that Mr. Nail's services would not be needed at any time subsequent to August 1, 2006.

Furthermore, because PPI is claiming intentional fraud and seeking punitive damages against Mr. Nail, the meaning and intent of the termination notice sent by Mr. Kinzel is relevant to whether Mr. Nail reasonably believed that PPI had released him from performing services and did not intend to invoke the exclusive services provision after that date.

Finally, the meaning and intent of the termination notice sent by Mr. Kinzel is relevant to Mr. Nail's argument that PPI waived the exclusive services provision by, *inter alia*, expressly notifying him that his services would not be needed after August 1, 2006.

(2)    Craig Freeman, PPI's Vice President of Administration, testified unequivocally at deposition that Mr. Kinzel made all decisions and was personally involved in all discussions regarding Mr. Nail's employment, the termination thereof, the release of Mr. Nail from providing services, the application and interpretation of Mr. Nail's employment agreement, the determination that Mr. Nail's employment at Denny's

---

[1]    Deposition excerpts and exhibits cited herein are annexed to the Declaration of A. Michael Weber dated May 8, 2008 ("Weber Dec.").

violated that agreement, and the cessation of payments to Mr. Nail.  (Freeman Dep. at 13-16, 19, 31-35, 52-53, 55-61, 65-66, 68-75, 81-85, 89-97, 135-38, 140-42, 144, 155, 157-61, 177, 181, 192-94.)  Mr. Freeman's testimony in this regard was clear.  For example:

> Q:    [W]ere you involved in any internal discussions with anyone at Cedar Fair regarding who would stay and who would go after the acquisition?
> A:    Yes.

> Q:    Who were those discussions with?
> A:    Dick Kinzel

* * *

> Q:    In your discussions with Mr. Kinzel regarding the individuals ... being placed on administrative leave, as you put it, who made the decision to select those individuals?
> A:    The final decision was Mr. Kinzel's.

* * *

> Q:    [I]n your discussions with Mr. Kinzel prior to the closing date of the acquisition did you and he have occasion to discuss Mr. Nail?
> A:    Yes.

> Q:    What was discussed about Mr. Nail.
> A:    What role he might play post acquisition.

> Q:    What was discussed about that?
> A:    Whether given the transitional needs of the business and the issues that were on our plate from legal and human resources standpoint, to what extent we'd be utilizing Mr. Nail's services.

* * *

> Q:    Were you involved in any discussions about whether the employment agreements of Mr. Nail and the other PPI executives would remain in effect after the acquisition?
> A:    Yes.

> Q:    Who were those discussions with?
> A:    Mr. Kinzel

* * *

> Q:    Who made the decision to retain Mr. Nail after the closing date?
> A:    That would have been based on a discussion I would have had with Mr. Kinzel.

* * *

Q:    Do you know who decided to terminate those individuals without cause?
A:    That would have been Mr. Kinzel.

\* \* \*

Q:    Do you recall what the general exchange was between you and Mr. Kinzel regarding [the determination that Mr. Nail's services were no longer needed]?
A:    Generally it was that we could absorb or we would plan to absorb the PPI legal functions into the corporate staff and at that time we would not need Mr. Nail's services.

\* \* \*

Q:    You didn't inform Mr. Kinzel or Mr. Crage about the circumstances [of Mr. Nail's employment at Denny's]?
A:    Oh, yes, of course.

\* \* \*

Q:    And what was discussed?
A:    Just that this, Lester has a job and another position that violated his employment agreement and we needed to cut him off immediately.

\* \* \*

Q:    Did you discuss your various conversations with Mr. Nail with anyone?
A:    Mr. Kinzel

\* \* \*

Q:    Who brought up the idea of suing Mr. Nail first?
A:    Mr. Kinzel.

\* \* \*

Q:    Who ultimately made the decision to sue Mr. Nail, do you know?
A:    Mr. Kinzel.

(Id.)[2]

In light of Mr. Kinzel's direct, personal knowledge of and involvement in these matters, it can hardly be said that his deposition would not lead to the discovery of relevant information.[3]

---

[2]    Consistent with this testimony, Mr. Nail states that Mr. Freeman told him that Mr. Kinzel made all of the decisions, and that he was "just the messenger."

[3]    As the Court will observe when reviewing Mr. Freeman's deposition testimony, Mr. Freeman had poor recollection of his conversations and other dealings with Mr. Kinzel regarding these matters.  To the extent Mr. Freeman had any recollection at all, it was only in very general

To the contrary, Mr. Kinzel's testimony regarding these facts and circumstances is directly relevant to PPI's claims and Mr. Nail's defenses, including, among other things: (i) the meaning and intent of the arguably ambiguous contract provisions relied upon by PPI; (ii) Mr. Nail's claim that Mr. Kinzel and PPI, through their words and actions, effectively waived the exclusive services provision by releasing him from all services after August 1, 2006; (iii) Mr. Kinzel's and PPI's failure to demand contractual performance by Mr. Nail at any time after his termination; (iv) Mr. Kinzel's and PPI's express intention never to invoke the exclusive services provision; (v) Mr. Kinzel's and PPI's decision not to avail themselves of Mr. Nail's services for the remainder of the contract term; (vi) Mr. Kinzel's and PPI's decision to reject Mr. Nail's written tender of performance in November 2007; (vii) Mr. Kinzel's and PPI's characterization of Mr. Nail as ineligible for rehire; (viii) the lack of any circumstances under which Mr. Kinzel or PPI would have considered requesting Mr. Nail's services after his termination; (ix) Mr. Kinzel's failure to consider Mr. Nail when a general counsel position was created at Cedar Fair in 2007; (x) the factual basis for Mr. Kinzel's and PPI's conclusion that Mr. Nail's employment at Denny's forever precluded him from providing services to PPI if asked; and (xi) whether Mr. Kinzel has any factual basis for PPI's assertion that Mr. Nail could not or would not have permanently or temporarily ceased working at Denny's in the event that PPI decided to invoke the exclusive services provision of his contract.

(3)    Mr. Freeman testified that Mr. Kinzel was directly involved in the due diligence and transition processes that accompanied Cedar Fair's acquisition of PPI

---

terms as to most matters. Accordingly, PPI cannot credibly argue that Mr. Kinzel's deposition would merely be cumulative or duplicative of Mr. Freeman's. Rather, Mr. Nail is entitled to depose Mr. Kinzel to determine whether he has a more complete recollection of these events, and whether that recollection differs from Mr. Freeman's.

from CBS, and that Mr. Kinzel decided that the existing employment contracts of PPI executives (including Mr. Nail) would remain in effect after the acquisition. (Freeman Dep. at 47-49, 61-63, 65-66.) It is probable that Mr. Kinzel had discussions with CBS management concerning the meaning and intent of those employment agreements, and it is highly likely that Mr. Kinzel would have discussed PPI's potential liability for continued compensation if any executives with employment agreements were terminated. Thus, although Mr. Nail's employment agreement was drafted by CBS, Mr. Kinzel, through his pre-acquisition discussions with CBS, may have knowledge regarding the meaning and intent of the arguably ambiguous "ready, willing, and able" provision of Mr. Nail's contract.

(4)    In addition to its breach of contract claim, PPI alleges that Mr. Nail acted in bad faith and engaged in intentional fraud and misrepresentation. (Complaint, ¶¶ 1, 49-62.) PPI seeks punitive damages against Mr. Nail based on the alleged intentional tort. (Id.) Mr. Nail contends that he acted in good faith and that, based on written and oral communications to him from Mr. Kinzel and others acting at Mr. Kinzel's direction, he reasonably believed that PPI had permanently released him from performing services under his employment agreement. Accordingly, Mr. Nail is entitled to depose Mr. Kinzel regarding those communications in order to determine their content, meaning, and intent, and to support his claim that he did not intend to intentionally defraud PPI.

(5)    In support of its claim that Mr. Nail acted in bad faith and committed intentional fraud, PPI intends to introduce evidence that other former PPI executives who had employment contracts were more forthcoming than Mr. Nail because they notified PPI when they obtained other employment. (Freeman Dep. at 153, 158-60.)

13

However, Mr. Freeman testified that one or more of those individuals had contacted Mr. Kinzel directly. (Id.) Thus, Mr. Freeman has no personal knowledge of those alleged notifications or what was discussed between those individuals and Mr. Kinzel. Mr. Nail is entitled to depose Mr. Kinzel to determine whether he was notified by other former PPI executives regarding their new employment, who notified him, and what was discussed.

(6)    One of Mr. Nail's counterclaims is that PPI unlawfully removed monies from his personal checking account without authorization. (Answer, ¶¶ 85-89.) According to Mr. Freeman, Mr. Kinzel was directly involved in the discussions and decisions regarding the cessation of payments to Mr. Nail. (Freeman Dep. at 137-41, 145-46, 195-99.) Therefore, Mr. Nail is entitled to depose Mr. Kinzel regarding his knowledge and approval of this transaction, and the purported justification behind it.

The foregoing are just some examples of Mr. Kinzel's direct personal knowledge regarding the facts and circumstances at issue in this case -- knowledge that is clearly relevant to the parties' claims and defenses. At an absolute minimum, Mr. Kinzel's deposition may lead to the discovery of relevant evidence. Given the Federal Rules' liberal discovery standards, and the general rule that barring a party from taking a deposition is a disfavored and extraordinary remedy, there is no basis for granting a protective order. Certainly, PPI has not satisfied its heavy burden of demonstrating a complete absence of relevant knowledge on the part of Mr. Kinzel. On the contrary, the evidence establishes a more than ample basis for permitting the deposition to proceed.

Finally, it is significant that PPI has refused to stipulate that it will not offer Mr. Kinzel's testimony in this case. (Mr. Nail had agreed to refrain from deposing Mr. Kinzel if PPI would so stipulate.) (Weber Dec., Exh. 3.) PPI's refusal to provide

14

assurances that Mr. Kinzel will not testify completely undercuts its claim that he lacks relevant knowledge. Moreover, PPI cannot properly seek to bar Mr. Nail from deposing Mr. Kinzel while at the same time reserving its right to use him as a witness.

### D. PPI's Allegations of Bad Faith and "Harassment" Are Baseless

PPI erroneously asserts that Mr. Nail seeks to depose Mr. Kinzel simply in order to "harass, annoy, and unduly burden" PPI. PPI's assertion is belied by the facts and should be rejected. Mr. Nail has at all times proceeded in good faith and made great efforts to avoid deposing Mr. Kinzel if possible.

Mr. Nail agreed to refrain from pursuing Mr. Kinzel's deposition if PPI provided a representation that he lacked personal knowledge regarding this matter. (Weber Dec., Exh. 4 at pp. 16-18.) PPI subsequently provided that representation in the form of statements by PPI's attorneys and a sworn statement from Mr. Kinzel himself. (Id., Exhs. 5, 6.) Based on the representations of PPI's counsel and the affidavit from Mr. Kinzel (both of which turned out to be false), Mr. Nail agreed to defer taking Mr. Kinzel's deposition pending further discovery.[4]

As the end of discovery neared and Mr. Nail considered whether to renew his deposition demand, he made a further attempt to avoid deposing Mr. Kinzel. Specifically, Mr. Nail agreed not to depose Mr. Kinzel if PPI would provide assurances that it would not call Mr. Kinzel to testify at trial. (Weber Dec., Exh. 3.) However, PPI refused to so stipulate. Thus, PPI had the opportunity to obviate the need for Mr.

---

[4]     PPI makes much of the fact that Mr. Nail noticed Mr. Kinzel for deposition early in the litigation, as if that somehow demonstrates bad faith. Mr. Nail served the notice because it was apparent that Mr. Kinzel was personally involved in, among other relevant matters, Mr. Nail's termination, the decisions regarding whether to utilize Mr. Nail's services, and the application and interpretation of Mr. Nail's employment agreement. As discussed above, it was Mr. Kinzel who released Mr. Nail from performing services for PPI by personally notifying Mr. Nail in writing that his services would not be required at any time after August 1, 2006.

Kinzel's deposition by stipulating that he would not be used as a witness. Because PPI must believe that Mr. Kinzel possesses relevant information, it declined to enter into such a stipulation.

Notwithstanding PPI's refusal to provide assurances that Mr. Kinzel would not testify on its behalf, Mr. Nail nevertheless agreed to defer considering whether to seek Mr. Kinzel's deposition until after a lower-level PPI official, Mr. Freeman, had been deposed. (Weber Dec., Exh. 7.) It was only *after* Mr. Freeman testified regarding Mr. Kinzel's intimate personal knowledge and involvement in this matter that Mr. Nail determined that it would be necessary to depose Mr. Kinzel.

Contrary to PPI's contention, Mr. Freeman's deposition was not a sufficient substitute for Mr. Kinzel's. First, Mr. Freeman clearly testified that virtually all of the relevant decisions regarding Mr. Nail and his employment agreement were made by Mr. Kinzel. Second, Mr. Freeman either could not recall or was unaware of Mr. Kinzel's reasoning and intent behind those decisions. Third, Mr. Freeman had very poor recall regarding his numerous discussions and meetings with Mr. Kinzel regarding Mr. Nail and his employment agreement. (Freeman Dep. at 13-16, 19, 31-35, 52-53, 55-61, 65-66, 68-75, 81-85, 89-97, 135-38, 140-42, 144, 155, 157-61, 177, 181, 192-94.) Thus, this is not a case where the same testimony could be obtained through a lower-level official (although Mr. Nail attempted to do so), and PPI has failed to demonstrate that Mr. Kinzel's testimony would be merely "duplicative." That Mr. Nail sought testimony from a lower-level corporate official before considering whether to depose Mr. Kinzel further demonstrates that Mr. Nail proceeded appropriately and in good faith.

In sum, Mr. Nail's initial deposition notice to Mr. Kinzel had a sound, good faith basis, and Mr. Nail took all reasonable steps to avoid deposing Mr. Kinzel, including; (i) relying on the representations of PPI's counsel and Mr. Kinzel, which turned out to be false; (ii) offering to forego Mr. Kinzel's deposition if PPI would agree not to call him as a witness, which PPI refused; and (iii) first deposing a lower-level official, who testified that Mr. Kinzel was directly and personally involved in relevant matters, and who had a poor recollection of events and was unable to provide complete testimony. PPI has failed to demonstrate that Mr. Kinzel's deposition is being sought for an improper purpose, or that Mr. Nail has failed to seek such discovery through less-intrusive means.

## II.    THE CONDITIONS PPI SOUGHT TO IMPOSE ON MR. KINZEL'S DEPOSITION WERE INAPPROPRIATE

PPI asserts that it offered a purported "compromise" that would have permitted Mr. Nail to depose Mr. Kinzel. However, the strict conditions proposed by PPI were unreasonable and unjustified.

### A.    Mr. Kinzel Should Be Required to Appear in PPI's Chosen Forum, New York

PPI has no right to insist that Mr. Kinzel's deposition be conducted in Ohio. It is a well-settled rule that a non-resident plaintiff who chooses this district as its forum must appear for deposition here "absent compelling circumstances." Clem v. Allied Van Lines Int'l Corp., 102 F.R.D. 938, 939 (S.D.N.Y. 1984). See also Dubai Islamic Bank v. Citibank, N.A., 2002 U.S. Dist. LEXIS 9794, *40 (S.D.N.Y. May 31, 2002) ("a plaintiff who brings suit in a particular forum may not avoid appearing for deposition in that forum.") (citing cases); The Alvin Schwartz, M.D., P.A. Employer/Employee Profit Sharing Plan v. O'Grady, 1988 U.S. Dist. LEXIS 15566, *3 (S.D.N.Y. Dec. 21, 1988)

("The law is well settled that 'absent extreme hardship, [a] plaintiff should appear for deposition in his chosen forum.'") (citation omitted).

Here, PPI chose to sue Mr. Nail in the Southern District of New York, and is therefore required to produce its corporate representative for deposition here. Indeed, Mr. Kinzel himself made the decision to sue Mr. Nail in this District. (Freeman Dep. at 177-78.) Contrary to its representations to the Court, PPI has provided no evidence whatsoever that it would be an extreme hardship for Mr. Kinzel to travel from Ohio to New York, nor has it alleged any other compelling circumstances that would warrant departure from the rule requiring it to appear for deposition in the forum it chose. Notably, PPI provides no affidavit from Mr. Kinzel explaining why it would be unduly burdensome for him to appear in New York. See Daly v. Delta Airlines, Inc., 1991 U.S. Dist. LEXIS 2762, *4-5 (S.D.N.Y. Mar. 7, 1991) (plaintiff failed to make requisite specific factual showing of undue hardship); O'Grady, 1988 U.S. Dist. LEXIS 15566 at *3-4 (same).

In short, PPI has failed to establish any compelling circumstances or extreme hardship that would excuse Mr. Kinzel from appearing for deposition in the forum PPI chose. On the contrary, because Mr. Nail has agreed to limit Mr. Kinzel's deposition to no more than four hours, any burden would be minimal and Mr. Kinzel would be able to return to Ohio by late afternoon. All of the other non-resident witnesses in this action have been deposed in New York, including Mr. Freeman and Mr. Nail, and PPI has provided no facts justifying an exception for Mr. Kinzel. Certainly, PPI, a large corporation, is easily able to sustain any additional expense of traveling to this District. Accordingly, Mr. Kinzel should be required to appear for deposition in New York.

**B.**    **There Is No Basis For Limiting Mr. Kinzel's Deposition to Two Hours**

PPI's insistence that Mr. Kinzel's deposition be limited to two hours is likewise unreasonable and unsupported. PPI has not established any basis for arbitrarily limiting the length of the deposition to a mere two hours, and Mr. Nail had no obligation to accept such a strict curtailment of his right to examine Mr. Kinzel. The four hours proposed by Mr. Nail is a much more reasonable length given the extent of Mr. Kinzel's involvement in virtually every aspect of this matter. (See discussion, supra at 8-14.)

In sum, PPI has failed to meet its burden of establishing compelling circumstances for its proposed deposition limitations. Therefore, its motion for a protective order should be denied to the extent it seeks to require Mr. Nail to depose Mr. Kinzel in Ohio for no more then two hours. Furthermore, PPI clearly is not entitled to attorneys' fees based on Mr. Nail's rejection of unreasonable restrictions that PPI has utterly failed to justify.

**III.    DEFENDANT'S CROSS-MOTION FOR SANCTIONS AND ATTORNEYS' FEES SHOULD BE GRANTED**

**A.    PPI and Mr. Kinzel Should Be Sanctioned Due To Their**
     **False Representations Regarding Mr. Kinzel's Knowledge**

As discussed, in its attempt to avoid producing Mr. Kinzel for deposition, PPI's attorneys represented to both the Court and defense counsel that Mr. Kinzel had absolutely no personal knowledge of any matters relevant to this action. These representations included the following:

- On February 19, 2008, PPI's counsel represented that "Neither Mr. Kinzel nor Mr. Crage have direct knowledge that would be relevant to this matter...." (Weber Dec., Exh. 5.)

19

•       On February 28, 2008, PPI's counsel stated in open court that Mr. Kinzel has "no knowledge whatsoever about the terms of Mr. Nail's employment, [his] contract, or how it came about." (Id., Exh. 4 at p. 14.)

•       On March 10, 2008, PPI's counsel again represented that Mr. Kinzel does not "have any direct or unique knowledge relevant to this case." (Id., Exh. 5.)

•       On March 28, 2008, PPI's counsel represented that "there simply is no basis for deposing [Mr. Kinzel or Mr. Crage] in this case, as their affidavits evidence." (Id., Exh. 5.)

In addition to those representations by PPI's counsel, Mr. Kinzel provided an affidavit in which he stated under oath that he lacked any "firsthand or unique knowledge of the matters in [this] case" and that any knowledge he might have is "indirect." (Weber Dec., Exh. 6.)

Mr. Nail relied on those representations in refraining from deposing Mr. Kinzel previously. However, based on the testimony of PPI's own witness, Mr. Freeman, it is now apparent that the statements by PPI's attorneys and Mr. Kinzel were untrue and intentionally misleading. As detailed above, and as the Court will readily observe from reviewing Mr. Freeman's testimony, Mr. Kinzel made all decisions and was personally involved in all discussions regarding Mr. Nail's employment, the termination thereof, the release of Mr. Nail from providing services, the application and interpretation of Mr. Nail's employment agreement, the determination that Mr. Nail's employment at Denny's violated that agreement, the failure of PPI to demand performance, PPI's rejection of Mr. Nail's tender of performance, and the cessation of payments to Mr. Nail. (Freeman Dep. at 13-16, 19, 31-35, 52-53, 55-61, 65-66, 68-75, 81-85, 89-97, 135-38, 140-42, 144, 155,

157-61, 177, 181, 192-94.)  PPI has not disputed the accuracy of Mr. Freeman's testimony in this regard.  Thus, it is clear that, contrary to Mr. Kinzel's sworn statement and PPI's representations, Mr. Kinzel does indeed have direct personal knowledge regarding matters relevant to this case.

It is extremely troubling that the representations made by Mr. Kinzel and PPI's attorneys regarding Mr. Kinzel's purported lack of knowledge have been shown to be false.  PPI's counsel repeatedly represented to both the Court and Mr. Nail that Mr. Kinzel has no personal knowledge regarding this action.  Significantly, Mr. Kinzel himself submitted a sworn affidavit to that effect.  Based on Mr. Freeman's undisputed testimony, it can only be concluded that those representations and sworn statements were made in bad faith and for the purpose of obstructing Mr. Nail's attempts to conduct legitimate discovery.  Accordingly, pursuant to Fed.R.Civ.P. 11, Fed.R.Civ.P. 37, and 29 U.S.C. § 1927, the Court should exercise its discretion and authority to impose sanctions against PPI and/or Mr. Kinzel in an amount the Court deems appropriate given the serious nature of their conduct.

### B.    PPI Should Be Ordered to Reimburse Mr. Nail For the Attorneys' Fees He Incurred Opposing PPI's Motion

Fed.R.Civ.P. 37 permits the Court to award attorneys' fees against a party who fails to provide discovery "without substantial justification," or who files an unjustified discovery motion.  As demonstrated above, it is clear that PPI's motion for a protective order lacks a reasonable basis.  According to the testimony of PPI's own witness, Mr. Kinzel has direct, personal knowledge regarding virtually all of the relevant issues, and PPI has not even attempted to justify is proposed restrictions on Mr. Kinzel's deposition.

Therefore, PPI should be ordered to reimburse Mr. Nail for the reasonable attorneys' fees expended responding to PPI's motion.

## CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that the Court issue an order: (i) denying PPI's motion for a protective order in its entirety; (ii) denying PPI's motion for attorneys' fees in its entirety; (iii) compelling Mr. Kinzel to appear in New York for a deposition of no longer than four hours; (iv) granting Defendant's cross-motion for sanctions and attorneys' fees; and (v) awarding Defendant such other or further relief as the Court deems appropriate.


Dated: New York, New York          Respectfully submitted,
       May 8, 2008
                                   LITTLER MENDELSON, P.C.


                          By:    _____S/_____
                                 A. Michael Weber (AW-8760)
                                 Michael P. Pappas (MP-6716)
                                 885 Third Avenue
                                 New York, New York 10022
                                 (212) 583-9600

                                 Attorneys for Defendant Lester Nail