UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
PARAMOUNT PARKS INC.                :
                                    :
            Plaintiff,             :        CASE NO.  07 CV 10595 (SHS)
                                    :
      v.                           :
                                    :
LESTER NAIL                         :
                                    :
            Defendant.             :
--------------------------------------------------------x

### PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER AND ATTORNEYS' FEES

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a Protective Order and Attorneys' Fees only supports Plaintiff Paramount Parks, Inc.'s ("PPI") contention that Richard Kinzel, the Chief Executive Officer of Cedar Fair, L.P. ("Cedar Fair"), has no unique or relevant knowledge regarding any *disputed issues* in this lawsuit; and, any deposition of him would be duplicative and for the sole purpose of harassing, driving up costs, delaying this Court's resolution of the merits of the claims, and unduly burdening PPI and/or its parent company, Cedar Fair.[1]  **Nowhere in his opposition brief does Defendant explain the blatant misrepresentations made by Defendant's counsel to this Court that Mr. Kinzel had "specific conversations" with Defendant regarding the Employment Agreement and other pertinent issues which provided the basis for the request to depose the CEO in the first place**.  Because he cannot.  We now know such conversations did not occur.  (Nail Dep. 82-87) This misrepresentation alone should warrant the denial of Mr. Kinzel's deposition.

---

[1] Without basis or good faith, Defendant also cross-moved for attorney fees and sanctions; PPI intends to respond separately in accordance with Court rules but asks the Court to *sua sponte* deny such absurd motion and recognize it for what it is: another tactic to take the focus off of Defendant's misrepresentations to this Court, increase litigation costs in what should be a straight forward matter and delay this Court's ruling on PPI's anticipated motion for judgment as a matter of law.

Conceding by silence that these "specific conversations" never occurred, Defendant instead predictably sets forth a litany of issues on which he contends Mr. Kinzel can offer testimony; these issues, however, are not relevant to the *disputed issues* in this lawsuit, which is the standard that a party must establish to take the deposition of a high-ranking corporate officer. See Harris v. Computer Associates Int'l, Inc., 204 F.R.D. 44, 46 (E.D.N.Y. 2001) ("Depositions of high level corporate executives may be duplicative, cumulative and burdensome where the person sought to be deposed has no personal knowledge *of the events in dispute*."(emphasis added)). Despite Defendant's protest, it is his burden to make such showing. See Consol. Rail Corp. v. Primary Indus. Corp., 1993 U.S. Dist. LEXIS 12600 (S.D.N.Y. 1993). Defendant has simply not met its burden.

Practically all of the issues in which Defendant contends Mr. Kinzel had direct involvement relate to the acquisition of PPI by Cedar Fair and the decision to terminate Defendant's active employment with PPI and continue to pay him pursuant to the Employment Agreement. PPI does not dispute that Mr. Kinzel has knowledge of PPI's decision that Defendant's and other executives' services were no longer needed and its communication to Defendant of such decision. Mr. Kinzel, however, had nothing to do with the language of the Employment Agreement, which was drafted by representatives of CBS, the former parent company of PPI. (Nail Dep. 49-52) Mr. Kinzel's involvement boils down to his signing, but not drafting, the notification letter to Defendant triggering the employment termination without cause provisions. While Defendant makes much of this knowledge and minute involvement, these facts are not in dispute (e.g., Defendant admits PPI had the right to trigger the termination without cause provisions for any reason, and the right use or not use his services under the Employment Agreement, and PPI admits it did not request or intend to use Mr. Nail's services at

any point before learning of his employment with Denny's); these issues are of no importance to the claims or counterclaims.

Finally, even if this Court determines that Mr. Kinzel should submit to a deposition, Defendant has shown no good reason to disregard this Court's April 25 indication that any such deposition should take place in Sandusky, Ohio.

### A. Defendant Has Failed To Show that Mr. Kinzel Has Specific, Unique Knowledge Regarding the Pertinent Issues in Dispute.

While a high-level corporate executive like Mr. Kinzel does have an extremely busy schedule, Apex depositions are not disfavored for this reason alone. The Apex doctrine requires that depositions of highest-ranking corporate officials should not occur absent the specific showing because of the potential for business disruption and harassment. See Consol. Rail Corp., 1993 U.S. Dist. LEXIS 12600 ("[P]ermitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent toll for harassment in litigation."); Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp., 203 F.R.D. 98, 102 (S.D.N.Y. 2001); Harris, 204 F.R.D. at 46 (denying motion to depose Chairman and CEO).

The cases cited by Defendant actually support application of the Apex doctrine because they turn on allowing depositions only of those high level corporate executives who were named defendants, who had specific, unique knowledge relevant to the issues in dispute in the case or where the individuals sought to be deposed did not submit a sworn affidavit attesting to their lack of unique relevant knowledge – unlike Mr. Kinzel. See Sanstrom v. Rosa, 1996 U.S. Dist. LEXIS 11923 (S.D.N.Y. 1996) (permitting deposition of former Governor Cuomo *who was a named defendant*); Gen. Star Indem. Co. v. Platinum Indem. Ltd., 210 F.R.D. 80, 83 (S.D.N.Y. 2002) (permitting deposition of high level executives where testimony of lower-level employee indicated the executives had unique relevant knowledge and the executives failed to submit an

affidavit swearing that they lacked unique relevant knowledge); Six West Retail Acquisition, Inc., 203 F.R.D. 98 (permitting depositions of high level executives only where plaintiffs submitted sufficient evidence that the executives had unique knowledge regarding the broad array of claims in the case); CBS, Inc. v. Ahern, 102 F.R.D. 820 (S.D.N.Y. 1984) (permitting a second day of deposition testimony of a high level executive with personal knowledge where the plaintiff had previously voluntarily produced the executive).  Unlike the cases cited by Defendant, Mr. Kinzel has submitted an affidavit attesting that he has no unique relevant knowledge regarding the facts at issue in this case, see Affidavit of Richard L. Kinzel ("Kinzel Aff.") at ¶¶ 5-7, and the testimony of the lower-level executive, Craig Freeman, supported Mr. Kinzel's affidavit.[2]  Accordingly, an Apex deposition of Mr. Kinzel would be only to harass and burden PPI and Cedar Fair.

In an attempt to bolster Mr. Kinzel's involvement, Defendant cites several examples of discoverable knowledge that he alleges Mr. Kinzel possesses – **all of which are irrelevant or not in dispute.**  First, Defendant alleges Mr. Kinzel has personal knowledge of the letter sent to Defendant informing him that his services at PPI would no longer be required.  The fact that the letter was sent to Defendant on July 27, 2006 and signed by Mr. Kinzel is not a fact in dispute.  (See Freeman Dep. Exh. C)  Mr. Kinzel does not need to be deposed to testify to the contents in the letter.  The contents are plainly evident on the face of the letter and the letter speaks for itself.[3]  (See Freeman Dep. Exh. C)[4]  Moreover, Mr. Kinzel did not even draft the letter.  (See

---

[2] Moreover, despite Defendant's counsel's representation, Consol. Rail Corp., 1993 U.S. Dist. LEXIS 12600, does not stand for the proposition that where a high-level executive denies personal knowledge a party can still take the executive's oral deposition.  In fact, the court in Consol. Rail Corp. *prohibited* the oral deposition of the three executives who submitted affidavits attesting that they had no personal knowledge of the facts at issue. Id. at *2-3.

[3] Defendant's contention that *Mr. Kinzel's intent* of the letter is somehow relevant to the formation of a reasonable belief on *Defendant's part* is puzzling.  Unless Defendant knew the intent of Mr. Kinzel (which is speculation) or was told so at the time,  Mr. Kinzel's intent cannot possibly form the basis for any reasonable belief on Defendant's part.

Freeman Dep. 94-97) Mr. Freeman simply told Mr. Kinzel the general contents of the letters that were going out to the group of PPI executives, and Mr. Kinzel signed them all. (See Id.) Obviously, Mr. Freeman, who has already been deposed on April 23, 2008, is the best person to testify to the notification letter, as he did. Mr. Kinzel can offer ***no unique relevant knowledge*** to this issue.

Second, Defendant alleges that "Mr. Kinzel made all decisions and was personally involved in all discussions regarding Mr. Nail's employment, the termination thereof, the release of Mr. Nail from providing services, the application and interpretation of Mr. Nail's employment agreement, the determination that Mr. Nail's employment at Denny's violated that agreement, and the cessation of payments to Mr. Nail." (Def. Memo. Contra at 9-10). Deceptively, Defendant cites portions of Mr. Freeman's deposition to make the appearance that Mr. Kinzel was deeply involved in the issues, when in truth, Defendant could only pull out tiny snippets of testimony by Mr. Freeman that reference Mr. Kinzel out of a lengthy deposition. Regardless, the cited portions of Mr. Freeman's testimony relate almost exclusively to the decision to terminate Defendant's active services under the Agreement. Again, this fact is ***not in dispute***. Both PPI and Defendant agree that PPI terminated Defendant's services with PPI and continued to pay his base salary and benefits in accordance with the Employment Agreement, and that PPI had the right to do that. (Nail Dep. 105-07)[5]

---

[4] Further, New York law is clear that the letter or any words or actions of PPI cannot be used to support any type of argument that waived the clear terms of the Employment Agreement. See NY Gen. Ob. Law 15-301; see also Nail Dep. 104-05.

[5] Defendant also cites Mr. Freeman's testimony about Mr. Kinzel's involvement with the decision to file the instant lawsuit against Defendant. Obviously, the CEO of Cedar Fair does not need to testify about the fact that PPI decided to sue Defendant. The existence of this litigation is self evident and the reasons for the suit are stated in the Complaint – it is not a relevant fact in any claim or defense. The only testimony of Mr. Freeman cited by Defendant about the issues in this case is that after another employee informed Mr. Freeman of Defendant's employment with Denny's, Mr. Freeman informed Mr. Kinzel about Defendant's new employment and Mr. Freeman proposed ceasing payments to Defendant because of Defendant's violation of the Employment Agreement. (See Freeman Dep. 137-

Defendant's next contention is rampant speculation and cannot form the basis of needing to depose Mr. Kinzel. Speculating that Mr. Kinzel *might* have "had discussions with CBS management concerning the meaning and intent" of the Employment Agreement, Defendant asserts a need to depose Mr. Kinzel about his interpretation of the "ready, willing and able" clause of the Employment Agreement. (Def. Memo. Contra at 13). First, if Defendant wanted discovery regarding the intent of the Employment Agreement, then they should have gone to the source, the drafter, CBS. Further, this is a written contract and, as agreed and as conceded by Defendant's counsel to this Court, the terms "ready, willing and able" are not ambiguous; they should be interpreted using their plain and ordinary meaning.[6]

Defendant also contends that he needs to depose Mr. Kinzel about the written and oral communications to him from PPI (i.e., from Mr. Freeman) regarding his termination. During his deposition, however, Defendant testified that subsequent to receiving the notice of termination letter dated July 27, 2006, *he had no conversations with anyone at PPI or Cedar Fair*.[7] As we know now, Defendant had no oral conversations with Mr. Kinzel – or anyone at PPI or Cedar Fair at any time regarding his termination or obligations under the Employment Agreement.[8] Further, Mr. Kinzel neither authored nor was involved with any other written communications to

---

38). Clearly, Mr. Kinzel can testify to nothing more than relaying what he was told by Mr. Freeman *who has already testified.*

[6] It is curious that Defendant is now contending that Mr. Kinzel's interpretation of the "ready, willing and able" clause is determinative on whether or not Defendant breached the contract. If in fact Mr. Kinzel is deposed, PPI will look to hold this admission against Defendant.

[7]   Q.   So you did not have any conversations with anyone at Cedar Fair or Paramount Parks regarding the meaning of anything in this letter.
     A.   Not to my memory. (Nail Dep. 96)

[8] Of course, Defendant had conversations with Mr. Freeman once the dispute arose when PPI discovered Defendant was working for Denny's.

Defendant after signing the July 27, 2006 letter. (Freeman Dep. 103, 105, 144, 148). Mr. Freeman was, and he was deposed.[9]

Defendant also contends that Mr. Kinzel needs to be deposed because the former CEO of PPI – *who was under a different contract than Defendant with different terms* – notified him upon his obtaining other employment following his termination without cause. The situations of other former PPI executives with different contracts and different terms from Defendant's Employment Agreement can play no factor in interpreting the plain language of Defendant's Employment Agreement and are otherwise irrelevant to this dispute.[10]

Defendant lastly argues that Mr. Kinzel should be deposed to testify to the removal of monies from Defendant's personal checking account, the subject of a counterclaim. However, while Mr. Kinzel generally approved of the discontinuation of payments and benefits to Defendant (see Freeman Dep. at 145-46),[11] he had nothing to do with the *reversal* of any deposit in Defendant's bank account. (Kinzel Aff. at ¶5) Mr. Freeman testified very clearly that he was the one who authorized the bank to stop the scheduled direct deposit into Defendant's bank account. (Freeman Dep. 195-6;[12] see also Freeman Dep. 197-8)

---

[9] Plaintiff's speculation that Mr. Kinzel was somehow personally involved in any "characterization of Plaintiff as ineligible for rehire" and a decision "to reject Plaintiff's written tender of performance in November 2007" *after* he was caught working for Denny's is completely baseless. Mr. Freeman did not testify that Mr. Kinzel considered any had any such things and in fact he was not involved; in any event these are red herrings. Defendant's contractual rights and obligations are governed exclusively by his Employment Agreement.

[10] Further, Mr. Freeman has already testified about any other former PPI executives with the same contract as Defendant who contacted Mr. Freeman about their new employment. (See Freeman Dep. 159). They did not contact Mr. Kinzel. PPI also disclosed the names of the individuals with the same contracts as Defendant in discovery. Defendant failed to depose any of them.

[11] The fact that PPI stopped paying Defendant upon learning of Defendant's employment with Denny's is **not a fact in dispute.**

[12]  Q.  I want to go back to the reversal of the direct deposit. Did you authorize that?
     A.  Yes. I authorized – I authorized stopping the payment of the paycheck that was to be paid on the 19th.
     Q.  Who authorized the reversal of the direct deposit?
     A.  I guess that would be me. Because the bank could not process my order from the 18th before the money went into the account. (Freeman Dep. 195-96).

Finally, Defendant's representations that PPI refused to stipulate that it would not call Mr. Kinzel at trial are misleading. Indeed, Defendant's counsel asked PPI's counsel for such stipulation *before Mr. Nail was deposed.* Obviously, without knowing what Defendant (or witnesses on his behalf) were going to claim Mr. Kinzel said or did, particularly as counsel had already represented to this Court that Defendant had specific conversations with Mr. Kinzel (which Mr. Kinzel denies), PPI could not yet agree to such stipulation. PPI's counsel specifically informed Defendant's counsel in a telephone conversation on April 16, that while PPI had no intention of calling Mr. Kinzel (or Mr. Craige) to testify at trial, PPI could not promise to not call them on rebuttal if Defendant testified at trial to having specific conversations with either one involving a disputed issue in the case, which of course PPI denies ever occurred. Now that Defendant has admitted to having no personal conversations with Mr. Kinzel pertaining to any pertinent issue, as PPI's counsel indicated to this Court on April 25, 2008, if Mr. Kinzel is not deposed, PPI will so stipulate to not calling Mr. Kinzel at trial.[13]

### B. According to this Court's April 25, 2008 Directions, Any Deposition of Mr. Kinzel Should Be Conducted in Sandusky, Ohio.

Remarkably, in rejecting PPI's offer of compromise to produce the CEO of Cedar Fair for two hours in Sandusky, Ohio (where Cedar Fair and Mr. Kinzel are located) and instead arguing in its response brief that the deposition should take place in New York, Defendant completely ignores this Court's express statements during the April 25 status conference regarding this very issue (i.e., that any deposition if held, should take place in Sandusky and be limited to a few hours).[14] Defendant also fails to recognize that the location and the boundaries of the deposition are within this Court's sole discretion. See Dubai Islamic Bank v. Citibank,

---

[13] Of course PPI would reserve the right to call Mr. Kinzel on rebuttal should Defendant (or any witnesses called on his behalf) contradict his deposition testimony regarding Mr. Kinzel at trial.

[14] Defendant's counsel also forgets its statement to the Court that he would defer to the Court's decision that the deposition take place in Sandusky.

N.A., 2002 U.S. Dist. LEXIS 9794, at *41 (S.D.N.Y. 2002) ("[T]he decision as to the location of the deposition lies within the discretion of the court.").

Despite the Court's previous determination within its discretion, Defendant continues to argue that because PPI is the plaintiff, PPI must "produce its corporate representative for deposition" in New York. (See Def. Memo. Contra at 18). This is misleading. *This is not the case of a Rule 30(b)(6) party deposition* and Mr. Kinzel is not a designated "corporate representative" of PPI (the actual Plaintiff) but is a *witness* who is also *a high level executive for Cedar Fair, PPI's parent company*. There is a general "presumption that the deposition of a [witness] will take place at the location of the [witness'] residence." Six West Retail Acquisition v. Sony Theatre Management Corp., 203 F.R.D. 98, 107 (S.D.N.Y. 2001). Moreover, this Court retains the ultimate discretion to determine the deposition specifics, particularly in the context of an Apex deposition. See Id. at 108.

Even if the rules regarding location of *party* depositions were applicable, the general rule is that "[w]here a corporation is involved as a party to the litigation, there is a general presumption in favor of conducting depositions of a corporation in its principal place of business." Buzzeo v. Bd. Of Educ., Hempstead, 178 F.R.D. 390, 392 (E.D.N.Y. 1998). Further, any discretional exception to this general rule regarding locations of plaintiff depositions should not be applied in this situation. The cases cited by Defendant in support of his contention are clearly distinguishable from the situation here. The majority of cases cited by Defendant deal with a ***named individual plaintiff*** attempting to be deposed outside the forum. See Daly v. Delta Airlines, Inc., 1991 U.S. Dist. LEXIS 2762 (S.D.N.Y. 1991) (denying named plaintiff's motion to be deposed in Dublin, Ireland); The Alvin Schwartz, M.D., P.A. v. O'Grady, 1988 U.S. Dist. LEXIS 15566 (S.D.N.Y. 1988) (denying named plaintiff's motion to be deposed via telephone

where plaintiff lived in Paris, France); Clem v. Allied Van Lines Int'l Corp., 102 F.R.D. 938 (S.D.N.Y. 1984) (denying named plaintiff's motion to be deposed via telephone). Mr. Kinzel is not a named plaintiff or party to this lawsuit, and Defendant has not noticed nor could it issue a 30(b)(6) deposition for Mr. Kinzel.[15]

Even if travel to Sandusky, Ohio imposes some *de minimums* burden on defense counsel,[16] "the convenience of counsel is less compelling than any hardship to the witnesses." Six West Retail Acquisition, Inc., 203 F.R.D. at 108 (ordering deposition of corporate executives to be conducted in Japan where the executives and company were located). Mr. Kinzel, the CEO of Cedar Fair, a publicly-traded company, has stated that it would be unduly burdensome on him to be deposed in New York. (See Kinzel Aff. at ¶8). As CEO, Mr. Kinzel's schedule is obviously very busy and would be disrupted by a one to two day trip to New York.[17] Mr. Kinzel's schedule could be more easily accommodated holding the deposition in Sandusky. Further, the costs and preparations associated with arranging the deposition in New York would only serve to further delay this case from being adjudicated by the Court. Finally, in line with the Court's earlier indications, any deposition of Mr. Kinzel should be limited to a few hours, and PPI believes that a deposition of 1-2 hours will be more than sufficient time for him to testify.

---

[15] The only case cited by Defendant involving depositions of a plaintiff-corporation's executives, Dubai Islamic Bank, is easily distinguishable due to the international travel involved. In Dubai Islamic Bank, the plaintiff sought to have the depositions taken in Dubai instead of New York. While the court noted hardships to both sides, on balance the court found it would be a greater hardship to conduct the depositions in Dubai because that would require both parties to send abroad, for a longer period of time, "an entourage of lawyers, reporters, and translators, not to mention countless boxes of relevant documentary materials." 2002 U.S. Dist. LEXIS 9794, at *49. The court also factored in the personal risk that would be involved because the U.S. State Department had issued warnings to Americans traveling abroad, especially to the Middle East. Id. at *43, 49. Clearly, there is no comparable burden for defense counsel to travel to Sandusky, Ohio.

[16] Further, given the minimal amount of even arguably relevant information that Mr. Kinzel may have, Defendant could also conduct the deposition by telephone.

[17] Although Defendant argues that Mr. Kinzel could make the trip to one day, with the location of Sandusky and limited flights and unpredictability of air travel, this would likely not be possible.

Dated: New York, New York
       May 9, 2008

                                              Respectfully submitted,

                                              **SQUIRE, SANDERS & DEMPSEY L.L.P.**

                                              By:  /s/ Jill S. Kirila

                                              Steven Skulnik (SS-7821)
                                              350 Park Avenue
                                              New York, New York 10022
                                              (212) 872-9800

                                              Jill S. Kirila (Ohio # 0068593)
                                              Lori Maiorca Zancourides (Ohio # 0076342)
                                              (pro hac vice admission)
                                              **SQUIRE, SANDERS & DEMPSEY L.L.P.**
                                              1300 Huntington Center
                                              41 South High Street
                                              Columbus, Ohio 43215

                                              Attorneys for Plaintiff
                                              Paramount Parks Inc.