UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
PARAMOUNT PARKS INC.            :
                                :
          Plaintiff,            :    CASE NO. 07 CV 10595 (SHS)
                                :
     v.                         :
                                :
LESTER NAIL                     :
                                :
          Defendant.            :
-------------------------------------------------------x

**MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................................... 1

II.   LEGAL ARGUMENT.................................................................................................... 1

      A.    Defendant Breached The Employment Agreement. ............................................. 1

            1.    Defendant's Obligation under Paragraph 7(c) to Be Willing, Ready
                  and Able to Render Exclusive Services to PPI During the
                  Remainder of the Employment Term Was Immediately Due,
                  Ongoing, and Unconditional....................................................................... 2

            2.    Defendant Concedes That He Was Not Able to Render Exclusive
                  Services to PPI While Employed by Denny's ............................................ 4

            3.    Defendant Separately Breached His Obligations under Paragraph 5
                  to Provide Exclusive Services to PPI and under Paragraph 11 to
                  Not Engage in any Other Occupation During the Employment
                  Term............................................................................................................ 6

            4.    Paragraphs 5 and 11 of the Employment Agreement Are
                  Enforceable .............................................................................................. 10

            5.    Defendant Breached His Obligations of Good Faith and Fair
                  Dealing...................................................................................................... 12

      B.    Defendant's Breach Of Contract Claim Should Be Dismissed As A Matter
            Of Law ................................................................................................................ 13

      C.    If Defendant's Contractual Obligations Do Not Require Return Of The
            Compensation And Benefits He Was Paid While Working For Denny's Or
            Are Found Unenforceable, PPI Should Prevail On Its Claim Of Unjust
            Enrichment.......................................................................................................... 14

      D.    A Genuine Issue Of Material Fact Remains On PPI's Fraud Claim.................... 15

      E.    It Is Undisputed That Defendant's Conversion Claim Should Be
            Dismissed As A Matter of Law .......................................................................... 16

III.  CONCLUSION............................................................................................................. 17

**I.    INTRODUCTION**

Defendant Lester Nail continued on the payroll and benefits plans of Plaintiff Paramount Parks Inc. ("PPI" or the "Company") for over 14 months, collecting over $196,000.00 in pay and benefits, all the while--unbeknownst to PPI--he was serving and being paid (even more) by another full-time employer. Defendant's conduct clearly violated his Employment Agreement and other obligations to PPI.

It is ironic that Defendant Lester Nail accuses PPI of attempting to rewrite the Employment Agreement when that is all that he does throughout his 29-page Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Cross-Motion for Summary Judgment ("Defendant's Memo. Opp."), wherein he attempts to: (1) write in with extrinsic evidence an obligation that PPI request Defendant's services and (2) delete other independent express obligations that remained during the clearly defined Employment Term. Despite these attempted re-writes, which are contrary to both the Employment Agreement itself and New York contract law, Defendant has only confirmed that PPI is entitled to Summary Judgment on its breach of contract and unjust enrichments claims against Defendant. Likewise, PPI is entitled to summary judgment on the breach of contract and conversion counter claims brought by Defendant.

**II.    LEGAL ARGUMENT**

    **A.    Defendant Breached The Employment Agreement.**

Under the plain meaning of Paragraph 7(c) of the Employment Agreement, Defendant was no longer entitled to receive compensation and benefits from PPI once he began working for Denny's, and he breached the Agreement by his continued acceptance of such compensation and benefits. Similarly, the plain language of Paragraph 5 of the Employment Agreement independently required Defendant to render exclusive services to PPI, and the plain language of

Paragraph 11 independently prohibited Defendant from engaging in any other occupation during the defined Employment Term, i.e. which unequivocally ran until December 31, 2007. As such, Defendant breached the Employment Agreement in three separate and independent ways once he began working for Denny's, and PPI is entitled to summary judgment on its breach of contract claim, as well as Defendant's breach of contract claim against it, as a matter of law on any one of these three grounds. Lake Constr. & Dev. Corp. v. City of New York, 211 A.D.2d 514, 515, 621 N.Y.S.2d 337, 338 (1st Dep't 1995); Skymall, Inc. v. Zuckerman, 2005 U.S. Dist. LEXIS 25108 (S.D.N.Y. Oct. 25, 2005) (Stein, J.) (granting summary judgment on behalf of the plaintiff on its breach of contract claim and the defendant's counterclaim because the contract was unambiguous).

    **1.** **Defendant's Obligation under Paragraph 7(c) to Be Willing, Ready and Able to Render *Exclusive Services to PPI During the Remainder of the Employment Term* Was Immediately Due, Ongoing, and Unconditional.**

The plain and unambiguous terms of Paragraph 7(c) of the Employment Agreement provide that if Defendant's employment with PPI was terminated without cause, PPI would pay Defendant his base salary and continue his benefits "for the remainder of the Employment Term, *so long as Executive is willing, ready and able to render exclusive services hereunder during such remainder of the Employment Term. Nothing herein shall obligate Paramount to utilize Executive's services* . . . ." (Nail Dep. 40-41, Def. Ex. B, ¶ 7(c)) (Emphasis added). Neither the parties nor courts have the power to modify this clear contractual language. Rather than rewrite an unambiguous agreement, a court should enforce the plain meaning of that agreement. CCG Assocs. I v Riverside Assocs., 157 A.D.2d 435, 440, 556 N.Y.S.2d 859, 862 (1st Dep't 1990). Defendant apparently misunderstands this basic tenant of contract law, arguing that the "plain meaning" of the Employment Agreement is PPI's counsel's interpretation without reference to

any testimonial evidence of the parties' interpretation or intent of Employment Agreement. On the contrary, where a contract is unambiguous, the language of the contract itself is the only admissible evidence of the parties' agreement, barring all other extrinsic evidence. American Express Bank, Ltd. v. Uniroyal, Inc., 164 A.D.2d 275, 562 N.Y.S.2d 613 (1st Dep't 1990) ("Resort to [any] extrinsic facts is inappropriate, however, because the language of the contract is plain and unambiguous.").

Despite Defendant's repeated attempts to alter paragraph 7(c) throughout Plaintiff's Memo. Opp., this provision ***does not* contain a requirement that PPI demand or request Defendant's services** before his obligation to be "willing, ready and able to render exclusive services hereunder during such remainder of the Employment Term" arises. On the contrary, Paragraph 7(c) says exactly the opposite – "Nothing herein shall obligate Paramount to utilize Executive's services." The meaning of Paragraph 7(c) is clear on its face — PPI was obligated to provide compensation and benefits to Defendant after the termination without cause provision was triggered, but only if Defendant was willing, ready and able to render exclusive services to PPI on August 1, 2006 and remained willing, ready and able to render exclusive services to PPI each and every day thereafter until the Employment Term ended on December 31, 2007.

Defendant similarly attempts to confuse the plain language of 7(c) of the Employment Agreement by offering deposition testimony of the Chief Executive Officer of PPI, Richard Kinzel. First, the Employment Agreement is not susceptible to interpretation, particularly by someone who testified, as Mr. Kinzel did, that he had never even read the Agreement. W.W.W. Assocs., Inc. v. Giancontieri, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 566 N.E.2d 639 (1990); (Kinzel Dep. 23). Nonetheless, Mr. Kinzel's testimony was consistent with the plain meaning of 7(c) – "we were paying him to *sit home* and get his resume ready for when the contract ended."

- 3 -

(Kinzel Dep. 68). Simply because Mr. Kinzel testified that he expected Defendant to be ready to perform services if requested does not mean that Defendant's obligations under the Employment Agreement arose only when requested, or that he could cure his breach by quitting his alternate employment if asked. Again, to read in such a requirement is to rewrite the Employment Agreement, which neither party has the power to do.

### 2. Defendant Concedes That He Was Not Able to Render Exclusive Services to PPI While Employed by Denny's.

Since the "willing, ready and able to render exclusive services hereunder during such remainder of the Employment Term" requirement of Paragraph 7(c) is written in the disjunctive, Defendant must show that he was all three – that he was (1) willing to render exclusive services to PPI for the remainder of the Employment Term, that he was (2) ready to render exclusive services to PPI for the remainder of the Employment Term, and that he was (3) able to render exclusive services to PPI for the remainder of the Employment Term. Defendant has to show each of those. Based on Defendant's employment for Denny's alone—which rendered it impossible for him to maintain his continued exclusivity to PPI—Defendant cannot contend that he was able. Defendant concedes this point.

In attempt to show compliance with the Employment Agreement, Defendant argues that he may have made himself available to render exclusive services if asked *from that point forward*, citing various reasons why his employment with Denny's would not have barred his employment at PPI. In doing so, Defendant concedes that *he was not able to render exclusive services to PPI while he was working for Denny's*. It matters not that Defendant could have *become* able to render exclusive services to PPI — from February 23, 2007 through October 18, 2007 *he was not able* and, as a result, for this reason alone he was not entitled to compensation

- 4 -

and benefits under the Employment Agreement during that time or thereafter as a result of his breach.

Moreover, nor could Defendant show that he was ready or willing to provide exclusive services to PPI. At best, Defendant testified that he would have considered returning to active employment for PPI – he does not and cannot say that he would have done so, and, in fact, all of the evidence is to the contrary. As a result of his employment with Denny's, Defendant received (or was eligible to receive) significant compensation and benefits, including: (1) $175,000.00 in annual salary, increased to $180,000.00 as of May 2008; (2) $22,777.54 in reimbursement for relocation expenses; (3) $10,000.00 special bonus; (4) $ 3,510.00 annual car allowance; (5) Participation in Denny's 2007 Incentive Program with a target incentive of 30% of Defendant's base salary; (6) Eligible to participate in medical, dental, vision, and additional life insurance coverage; (7) Eligible to join Denny's Deferred Compensation Plan, a fully vested, matched savings plan and Denny's 401(k) Plan; (8) Eligible to participate in Denny's 2007 Long-Term Growth Incentive Program; and (9) Denny's Corporation Stock Option Award. (Nail Dep., 143-153, 159-62, Pl. Exs. 5-13). Despite his self-serving statements to the contrary, Defendant cannot show he was ready or willing under these circumstances.[1]

Further, PPI is not required to show that Defendant's employment at Denny's was inherently inconsistent with his performing services for PPI or that Defendant's job at Denny's breached a duty of loyalty to PPI. Rather, the Employment Agreement is plain and simple – Defendant was to have an exclusive services relationship with PPI for the duration of the Employment Term. He failed to do so, and, consequently, he breached the Agreement.

---

[1] At a minimum, the separate "ready" and "willing" factors would be issues of fact precluding summary judgment on either of these grounds.

> **3.  Defendant Separately Breached His Obligations under Paragraph 5 to Provide Exclusive Services to PPI and under Paragraph 11 to Not Engage in any Other Occupation During the Employment Term.**

In yet another desperate attempt to re-write the Employment Agreement, Defendant now argues that every provision of the Employment Agreement other than Paragraph 7(c) "fell away" once the termination without cause provision of the Employment Agreement was triggered. This is nonsense. As Defendant readily admits, a contract must be construed so as to give full meaning and effect to all of its provisions. Trump-Equitable Fifth Ave. Co. v H.R.H. Constr. Corp., 106 A.D.2d 242, 244; 485 N.Y.S.2d 65, 244 (1st Dep't 1985); Defendant's Memo. Opp. p. 13 (citing Cruden v. Bank of N.Y., 957 F.2d 961, 976 (2d Cir. 1992)). It is a cardinal rule of contract construction that a court should adopt an interpretation of a contract that renders no portion of the contract meaningless. See, e.g. See Mionis v. Bank Julius Baer & Co., 301 A.D.2d 104, 109, 749 N.Y.S.2d 497, 502 (N.Y. App. Div. 2002) ("Courts are obliged to interpret a contract so as to give meaning to all of its terms."); MTV Networks v. Fox Kids Worldwide, Inc., 1998 N.Y. Misc. LEXIS 701 (New York County May 13, 1998) ("It is well established that a contract should be interpreted to give meaning and effect to every provision, and anomalous consequences should be avoided.").

In Paragraph 5, a separate provision in the Agreement, Defendant clearly agreed that his "services shall be completely exclusive to Paramount during the term hereof." (Nail Dep. 40-41, Def. Ex. B, ¶ 5). The term of the Employment Agreement was expressly defined as the time period from January 1, 2006 through December 31, 2007, i.e. the "Employment Term." (Nail Dep. 40-41, Def. Ex. B, ¶ 1(a)). Similarly, Paragraph 11 of the Employment is very clear – Defendant agreed not to engage in any other occupation during the Employment Term. (Nail Dep. 40-41, Def. Ex. B, ¶ 11). Where, as here, the meaning of an agreement among sophisticated parties is unambiguous on its face, the agreement does not become ambiguous

- 6 -

simply because one of the parties later asserts that it favors a different interpretation. See, e.g., Hunt Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d 1274, 1277 (2d Cir. 1989) (concluding that "language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation"); Wards Co. v. Stamford Ridgeway Assocs., 761 F.2d 117, 120 (2d Cir. 1985) (courts "will not torture words to impart ambiguity where the ordinary meaning leaves no room for ambiguity"); Health-Chem Corp. v. Baker, 737 F. Supp. 770, 773 (S.D.N.Y. 1990) (that parties disagree as to meaning of contractual term "does not in itself create a question of fact"); Kemelhor v. Penthouse International, Ltd., 689 F. Supp. 205, 212 (S.D.N.Y. 1988), aff'd, 873 F.2d 1435 (2d Cir. 1989) ("contract will not be held to be ambiguous merely because the parties ascribe varying meanings to a specific provision").

In fact, Defendant concedes that these provisions restrict activities ***during the Employment Term***. (Defendant's Memo. Opp. p. 16). Nonetheless, Defendant argues that "those Sections were clearly intended to address Mr. Nail's performance obligations *during* his employment, not after his employment was terminated." (Defendant's Memo. Opp. p. 16).(emphasis in original). In other words, Defendant would have the Court read "Employment Term" as meaning "during his employment." If that is the case, then the same must be true for Paragraph 7(c), which also references the Employment Term as the time period during which PPI was to continue Defendant' salary and benefits. (Nail Dep. 40-41, Def. Ex. B, ¶ 7(c): "then Paramount shall be obligated both to pay to Executive all applicable base salary pursuant to paragraph 2(a) of this Agreement and also Paramount shall continue all applicable plans and/or benefits pursuant to paragraph 3 hereof ***for the remainder of the Employment* Term**…."). Defendant cannot have it both ways. If PPI's obligations toward Defendant continued during the "Employment Term," as that term is expressly defined, so, in turn, did Defendant's obligations to

PPI continue during the Employment Term. If Defendant is relieved of his obligations during the "Employment Term" because they "don't make sense" to continue after his active employment ended, then his rights to salary and benefits must have also been extinguished. That means that PPI owed Defendant nothing after his termination and should get back the value of all compensation and benefits that it provided to Defendant from August 1, 2006 through October 18, 2007, amounting to more than $180,000.00.

Further, although not critical to the enforcement of Paragraphs 5 and 11 as stand-alone obligations, Paragraph 7(c) does reference the other provisions of the Employment Agreement. According to Paragraph 7(c), PPI would continue to provide compensation and benefits to Defendant during the Employment Term "so long as Executive is willing, ready and able to render exclusive services *hereunder* during the remainder of the Employment Term." (Nail Dep. 40-41, Def. Ex. B, ¶ (c)) (Emphasis added). "Hereunder" clearly references the Employment Agreement generally, including terms beyond Paragraph 7(c).

Moreover, Defendant's argument that Paragraph 7(c) is the only provision that applied after the termination without cause option was triggered is even inconsistent with his sworn deposition testimony.

> Q. Would you agree that after you have been terminated without cause under this agreement that you have any continuing obligations under this agreement?
>
> A. **Yes, I would agree with you**.
>
> * * *
>
> Q. And your position is that none of the other obligations [other than Paragraph 7(c)] apply to you post your termination without cause?
>
> A. **I would not agree with that statement**.

(Nail Dep. 62-63) (Emphasis added). Defendant expressly conceded in his deposition that several of his obligations under the Employment Agreement continued after his employment was terminated without cause, including Paragraphs 8, 9, 10, 12 as it relates to confidentiality, and 13(a) - (c). (Nail Dep. 64-69). Not surprisingly, the only two provisions that Defendant identified as *not* applying after his termination without cause were Paragraphs 5 and 11. (Nail Dep. 64-70). "Because it doesn't make sense." (Nail Dep. 65). On the contrary, Paragraph 5 and 11 are both very clear that they continue for the duration of the Employment Term. The Employment Agreement is not a buffet line from which Defendant may pick and choose what he wants and ignore what he does not like. Libra Bank Limited v. Banco Nacional De Costa Rica, S.A., 570 F. Supp. 870, 893 (S.D.N.Y. 1983) ("where there is no inherent ambiguity, courts should not . . . reach an artificial interpretation in order to relieve a party from an improvident bargain").

In essence, Defendant is asking for this Court to modify the Employment Agreement. However, Paragraph 15 of the Employment Agreement expressly provides that it can only be changed by a writing signed by both parties. (Nail Dep. 40-41, Def. Ex. B). Accordingly, Defendant would have to offer proof of a written and signed amendment to the Employment Agreement to support this "modification" – this he cannot do. Such unilateral modification also is impermissible under New York law. See N.Y. Gen. Oblig. Law § 15-301 ("A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent.").

### 4.     Paragraphs 5 and 11 of the Employment Agreement Are Enforceable.

Not surprisingly, to circumscribe the plain language of Paragraphs 5 and 11 of the Employment Agreement, Defendant argues that such paragraphs are somehow post-term non-competition provisions. This is untrue, and Defendant's attempt to force a square peg into a round hole will not work. By definition, a restrictive covenant or noncompete restrains an individual from earning a livelihood. See, e.g. Post v. Merrill Lynch Pierce Fenner & Smith, 48 N.Y.2d 84, 86, 397 N.E.2d 358, 359, 421 N.Y.S.2d 847, 848 (1979) ("powerful considerations of public policy . . . militate against sanctioning the **loss of a man's livelihood**") (Emphasis added). Here, Paragraphs 5 and 11 do not restrain Defendant's ability to earn a livelihood, because ***PPI and Defendant were still under a continuing services contract during which PPI continued to pay him during the period of the Employment Term***. Indeed, Defendant's pay was generous – amounting to nearly $200,000 in salary alone from August 2006 through October 2007 during the continuing term of the parties' contract.

Indeed, Defendant admits that he continued to be under contract with PPI. (Nail Dep. 106). He admits that PPI had contractual obligations to him, and that he, in turn, continued to have contractual obligations to PPI. (Nail Dep. 62-69). In fact, (1) Defendant was still being paid from the company payroll; and (2) was still receiving company benefits as an employee.[2] (Cranford Dep. 36-37; Nail Dep. 117). Even Defendant represented that he was an employee of PPI when he filled out his benefit enrollment forms in May 2007. (Def. Ex. H). In short, Defendant received the benefit of, in many ways, being continuously treated as an employee of

---

[2] Indeed, Defendant was not even placed on continuing benefits via COBRA, which is triggered upon termination of employment, but remained on PPI's regular employee benefits plans.

PPI and should not be permitted now to disavow the obligations to PPI that flowed from those benefits.[3]

In a further attempt to confuse the issues, Defendant makes much of the fact that other executive were placed on administrative leave for a period of time and that he was not. This is totally irrelevant. As Mr. Freeman and Mr. Kinzel clearly testified, other executives were placed on administrative leave while PPI was deciding what if any active role those executives would play after the transaction. (Freeman Dep. 83-84; Kinzel Dep. 32-33). Section 7(c) of Defendant's Employment Agreement (and others with the same Agreement), was thereafter triggered, and, in doing so, PPI clearly communicated to Defendant that such trigger was not

---

[3] Even if Paragraph 5 or 11 were considered noncompetes, such provisions are inherently reasonable as PPI agreed to provide, and in fact did provide, compensation and benefits to Defendant as if he remained an active employee until it was alerted to his breach. See Bradford v. The New York Times Co., 501 F.2d 51 (2d Cir. 1974) (affirming dismissal of former employee's breach of contract action where former employer stopped paying the individual's retirement units after he engaged in other business in violation of the contract). According to the Second Circuit in Bradford:

> Common law courts in general and the courts of New York in particular have distinguished between, on the one hand, a covenant barring an employee or partner from competing while he is employed . . . and, on the other hand, covenants which bar an employee from competing after he has severed his relationship with his employer. . . . The case before us presents no such elements of unfairness. Bradford's resignation *did not terminate his employer's obligations*. He was to receive annual installments of stock for a ten-year period so long as he abided by his promise not to compete. *There was a continuing consideration being paid for his loyalty and good will.* While this was a restraint upon his liberty, it can hardly be described as unreasonable. Had he persevered, his reward would have been great indeed. In the employee restraint cases we have considered, breach led either to injunctive relief, in which case of course the employee was prevented from going elsewhere and at the same time received no new or continuing consideration from his former employer, or to the forfeiture of an amount posted by the employee or a judgment against him for a sum fixed as liquidated damages. Here, Bradford *paid nothing but merely disabled himself from collecting the continuing payments made by the Times*.

Id. at 57-58 (internal quotes omitted) (emphasis added); see also MTV Networks, 1998 N.Y. Misc. LEXIS 701, at *14-*15 (granting the former employer's motion for a preliminary injunction to bar a former executive from working for a competitor during the term of his employment agreement and while he continued to receive compensation and noting that "an employer is entitled to protection from unfair or illegal conduct that causes economic injury, especially where the employee's ability to earn a living is not impaired").

intended to and had no effect on his other existing and continuing obligations under the Employment Agreement.[4]  (Freeman Dep., Def. Ex. C).

Moreover, all of the non-compete cases cited by Defendant involve the enforcement or attempted *specific performance* of a non-compete (and wherein the defendant did not have continuing service obligations to the company), and, thus, involved an analysis of circumstances under which such a restriction may be enforced by injunction.  Unlike these cases, PPI is not seeking to enforce or seek injunctive relief on any alleged non-compete.  It is merely seeking to recover the value of compensation and benefits that it provided to Defendant while he was in violation of the Agreement.  See Bear, Stearns & Co. Inc. v. Sharon, 2008 U.S. Dist. LEXIS 35294, *8 (D. Mass. Apr. 4, 2008) (denying injunctive relief to enforce a 90-day notice of termination provision of a contract, but concluding that there was a "reasonable likelihood that Bear Stearns will prevail on its breach of contract action [for damages] because there was a binding contract between the parties and Sharon's resignation without 90 days' prior written notice constitutes a breach.").

### 5. Defendant Breached His Obligations of Good Faith and Fair Dealing.

Contrary to Defendant's assertions, the implied covenant of good faith and fair dealing may go beyond the express contractual terms between the parties.  See, e.g. See Kalisch-Jarcho, Inc. v. City of New York, 58 N.Y.2d 377, 384, 448 N.E.2d 413, 416 (1983).[5]  It is beyond

---

[4] Defendant likewise attempts to argue that simply because PPI triggered the termination without cause provision under the Agreement that should bar the enforcement of any purported non-compete.  On the contrary, unlike in circumstances where an employer terminates an employment relationship and retains no ongoing obligations to its former employee and vice versa, in this case, it is beyond dispute that PPI continued to have and at all times complied with its obligations under the Employment Agreement.  Accordingly, Defendant can hardly be relieved of his obligations simply because PPI exercised its contractual rights to terminate his active employment, all the while continuing to provide compensation and employee benefits in accordance with its own contractual obligations.

[5] Moreover, PPI clearly alleged facts supporting a breach of this covenant in the Complaint, as it alleged, *inter alia*, that Defendant's actions frustrated PPI's ability to exercise its rights under the Employment Agreement. (Complaint ¶ 42).

dispute that "the implied covenant of good faith and fair dealing "precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement." Leberman v. John Blair & Co., 880 F.2d 1555, 1560 (2d Cir. 1989). The fact remains that Defendant was aware of the promises he made in the Employment Agreement to provide exclusive services to PPI (Paragraph 5) and not engage in any other occupation during the Employment Term (Paragraph 11), as well as the fact that the Employment Agreement only provided for him to receive continuing compensation and benefits under Paragraph 7(c) if he was willing, ready and able to render exclusive services to PPI under the terms of the Employment Agreement for the remainder of the Employment Term. Defendant's failure or refusal to notify PPI of the fact that was employed by Denny's prevented PPI from exercising its right to cease providing such compensation and benefits immediately or to otherwise assess its rights under the Agreement.

### B. Defendant's Breach Of Contract Claim Should Be Dismissed As A Matter Of Law.

Interestingly, although Defendant purports to request summary judgment in its favor on its breach of contract claim, Defendant's arguments in his cross-motion do little more than attempt to create a dispute of fact by offering extrinsic evidence regarding the meaning of Paragraphs 7(c), 5 and 11 of the Employment Agreement. As such, Defendant would not be entitled to summary judgment. In any event, Defendant's breach of contract claim against PPI must fail, as PPI was relieved of its obligations under the Agreement as a result of Defendant's breaches of his obligations to provide exclusive services and/or not to engage in another occupation, and/or failure to satisfy a condition precedent to his receipt of compensation and benefits, e.g. Defendant's failure to remain "willing, ready and able to render exclusive services

hereunder during such remainder of the Employment Term." (Nail Dep. 40-41, Def. Ex. B, ¶ 7(c)).

For these reasons, Defendant's breach of contract claim against PPI fails as a matter of law.

### C. If Defendant's Contractual Obligations Do Not Require Return Of The Compensation And Benefits He Was Paid While Working For Denny's Or Are Found Unenforceable, PPI Should Prevail On Its Claim Of Unjust Enrichment.

PPI does not dispute that ordinarily an enforceable contract would bar application of the equitable principle of unjust enrichment. However, in this case, Defendant is arguing that one or more of the provisions of his Employment Agreement are, in fact, unenforceable. Defendant likewise argues that he was not contractually required to disclose his employment with Denny's. PPI adamantly opposes these claims; however, to the extent that one or more of these theories are accepted, PPI submits that, at minimum then, the benefits provided to Defendant must be scrutinized under equitable enrichment principles, as clearly Defendant accepted compensation and benefits from PPI, to the detriment of PPI, under circumstances that are unjust, inequitable, and that in equity and in good conscience should not be permitted. See, e.g. Seiden Assoc., Inc. v. ANC Holdings, Inc., 754 F. Supp. 37, 41 (S.D.N.Y. 1991) ("In the event that there is no enforceable contract between plaintiff and defendants, plaintiff may be able to recover under its alternative theories of quantum meruit and/or unjust enrichment depending on the particular circumstances of the transaction."). "Unjust enrichment applies whenever 'justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract ….' Indeed, lack of a remedy under the contract is a precondition for recovery based upon unjust enrichment." Kull v. Davidoff of Geneva (NY),

- 14 -

Inc., 2004 U.S. Dist. LEXIS 11575 (S.D.N.Y. June 22, 2004) (quoting Gagne v. Vaccaro, 255 Conn. at 401).

### D. A Genuine Issue Of Material Fact Remains On PPI's Fraud Claim.

Contrary to Defendant's assertions, there is a genuine issue of material fact on PPI's fraud claim. Accordingly, PPI's fraud claim is not susceptible to dismissal on Defendant's Motion for Summary Judgment.[6]

PPI's fraud claim is not based on its allegations of breach of contract. Rather, there are significant other factual issues that support PPI's allegations, including:

(1)  Defendant did not inform PPI of his employment with Denny's. (Nail Dep. 125);

(2)  Defendant did not inform Denny's that he was still under contractual obligations with PPI. (Nail Dep. 155-56);

(3)  In April 2007, Defendant sold his house in Charlotte and, by at least early June 2007 Defendant had bought a half million dollar home and relocated permanently to South Carolina (site of Denny's headquarters) without notifying PPI. (Nail Dep., 181-82, Pl. Exs. 22-23);

(4)  Despite the fact that Defendant sold his North Carolina house in April 2007, on May 29, 2007 Defendant submitted enrollment forms for continued enrollment in PPI employee medical benefits (commencing July 1, 2007) and listed his Charlotte home as his residence on those forms. (Nail Dep. 135-37, Pl. Ex. 22, Def. Ex. H);

(5)  Defendant never informed PPI of any change of address. (Nail Dep. 122); and

(6)  Defendant was present during and heard a conversation between his wife and PPI Human Resources Manager Sandy Cranford after Defendant had obtained and began working for Denny's, during which PPI alleges Ms. Cranford was told that Defendant would be doing fine if he could just find a job, and Defendant in no way corrected this untrue comment; (Nail Dep. 11-14; Cranford Dep. 16-18); and

(7)  Defendant enrolled in and continued to receive PPI employee medical benefits during the time that he was working at Denny's, despite the fact that Denny's offered benefits as well. (Nail Dep. 117, 152-54, Def. Ex. H, Pl. Ex. 10).

---

[6] Defendant likewise incorrectly implies that PPI has abandoned its fraud claim. Simply because PPI did not move for summary judgment on that claim, does not equate to an abandonment of such claim.

The elements of a fraud claim are as follows: (1) misrepresentation or a material omission of fact which was false and known to be false by defendant, (2) made for the purpose of inducing the other party to rely upon it, (3) justifiable reliance of the other party on the misrepresentation or material omission, and (4) injury.  See, Channel Master Corp. v Aluminium Ltd. Sales, 4 N.Y.2d 403, 176 N.Y.S.2d 259, 151 N.E.2d 833.  New York courts have found that material omissions, and not merely misrepresentations, may constitute common law fraud, where the defendant's failure to supply the withheld information itself creates a misleading impression, or where the nature of the parties' preexisting relationship imposes an independent duty upon the defendant to speak.  See Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (1996); Hadden v. Consolidated Edison Co., 45 N.Y.2d 466, 469-70 (1st Dep't 1978) (concluding that both concealment and affirmative misrepresentations made to a principal can for an actionable basis for a fraud claim under New York law).

Regardless of the fact that Defendant's was not an active employee of PPI as of August 1, 2006, the parties were still bound by the Employment Agreement, PPI was paying Defendant for his exclusivity, and PPI continued to be Defendant's principal.  As such, Defendant owed it at a minimum a duty not to misrepresent or conceal facts upon which PPI would justifiably rely.  Admittedly, Defendant disputes Ms. Cranford's testimony that his wife informed her that Defendant did not have a job as of May/June 2007; however, that does not entitle Defendant to summary judgment, but merely signifies a genuine issue of material fact.

### E. It Is Undisputed That Defendant's Conversion Claim Should Be Dismissed As A Matter Of Law.

Throughout Defendant's Memo. Opp., he does not dispute his conversion claim fails as a matter of law.  As argued in PPI's Motion for Summary Judgment, and apparently conceded by Defendant, Defendant had no immediate right to possession of any money from PPI and PPI's

stop-payment on its check to Defendant was lawful. Further, Defendant's conversion claim likewise fails as it is duplicative of his breach of contract claim. Accordingly, the conversion claim cannot survive summary judgment and should be dismissed as a matter of law.

### III.     CONCLUSION

For all of the foregoing reasons, PPI is entitled to summary judgment on its breach of contract and unjust enrichments claims against Defendant. Likewise, PPI is entitled to summary judgment on the breach of contract and conversion claims brought by Defendant. Conversely, Defendant's motion for summary judgment on PPI's breach of contract, unjust enrichment and fraud claims should be denied.

Dated: New York, New York
       August 8, 2008

Respectfully submitted,

**SQUIRE, SANDERS & DEMPSEY L.L.P.**

By: /s/ Jill S. Kirila

Steven Skulnik (SS-7821)
350 Park Avenue
New York, New York 10022
(212) 872-9800

Jill S. Kirila (Ohio # 0068593)
Lori Maiorca Zancourides (Ohio # 0076342)
(pro hac vice admission)
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1300 Huntington Center
41 South High Street
Columbus, Ohio 43215

Attorneys for Plaintiff
Paramount Parks Inc.