LITTLER MENDELSON, P.C.
A. Michael Weber (AW-8760)
Michael P. Pappas (MP-6716)
885 Third Avenue
New York, New York 10022
(212) 583-9600

Attorneys for Defendant
 Lester Nail

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

PARAMOUNT PARKS, INC.,

        Plaintiff,

    -against-                          Case No. 07 Civ. 10595 (SHS) (MJD)

LESTER NAIL,

        Defendant.
_____

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND IN FURTHER OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

TABLE OF CONTENTS

PAGE

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 1

I. PPI CANNOT ESTABLISH A BREACH BY MR. NAIL ........................................ 1

    A. Mr. Nail Was "Willing, Ready and Able" to Provide Exclusive Services ........................................................................................................ 1

        (1) The Undisputed Evidence Establishes That Mr. Nail Was Willing and Ready To Provide Services .............................................. 2

        (2) The Undisputed Evidence Establishes That Mr. Nail Was Able To Provide Services ................................................................... 3

    B. Sections 5 and 11 of the Agreement Are Inapplicable Here ......................... 7

II. PPI's CLAIM FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING SHOULD BE DISMISSED AS A MATTER OF LAW ............. 12

III. PPI'S QUASI-CONTRACT CLAIM FOR "UNJUST ENRICHMENT" SHOULD BE DISMISSED AS A MATTER OF LAW ........................................ 13

IV. PPI's FRAUD CLAIM SHOULD BE DISMISSED AS A MATTER OF LAW ....................................................................................................................... 13

CONCLUSION ..................................................................................................................... 14

## TABLE OF AUTHORITIES

PAGE(S)

*Adelaide Productions, Inc. v. BKN Int'l, A.G.*, 38 A.D.3d 221, 834 N.Y.S.2d 3 (1st Dep't 2007) .................................................................. 13

*Bank of Tokyo-Mitsubishi, Ltd. v. Kvaerner*, 243 A.D.2d 1, 671 N.Y.S.2d 905 (1st Dep't 1998) ...................................................................... 9

*Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield*, 448 F.3d 573 (2d Cir. 2006) .......................................................................................... 13

*Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir. 2005) ............................... 12

*Consarc Corp. v. Marine Midland Bank*, 996 F.2d 568 (2d Cir. 1993) .................... 3

*Cooper, Baumdo, Hecht & Longworth, LLP v. Kuczinski*, 14 A.D.3d 644, 789 N.Y.S.2d 508 (2d Dep't 2005) ............................................................... 13

*Fisher v. Big Squeeze, Inc.*, 349 F. Supp.2d 483 (E.D.N.Y. 2004) ......................... 14

*Gardiner Int'l, Inc. v. J.W. Townsend & Assocs., Inc.*, 13 A.D.3d 246, 788 N.Y.S.2d 312 (1st Dep't 2004) .............................................................. 6

*Geletucha v. 222 Delaware Corp.*, 7 A.D.2d 315, 182 N.Y.S.2d 893 (4th Dep't 1959) ................................................................................................ 5

*General Elec. Co. v. Compagnie Euralair*, 945 F. Supp. 527 (S.D.N.Y. 1996), aff'd, 164 F.3d 617 (2d Cir. 1998) ..................................................................... 8

*Harper v. United States*, 949 F. Supp. 130 (E.D.N.Y. 1996) .................................. 2

*Harris v. Provident Life and Acc. Ins. Co.*, 310 F.3d 73 (2d Cir. 2002) ................. 12

*Isaacs v. Westchester Wood Works, Inc.*, 278 A.D.2d 184, 718 N.Y.S.2d 338 (1st Dep't 2000) ....................................................................................... 8

*Jim Henson Productions, Inc. v. John T. Brady & Assocs., Inc.*, 16 F. Supp. 2d 259 (S.D.N.Y. 1997) ................................................................. 5

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195 (2d Cir. 2005) ........................................................................................... 9

*Loughman v. Unum Provident Corp.*, 536 F. Supp.2d 371 (S.D.N.Y. 2008) ............ 8

*Muze, Inc. v. Digital On-Demand, Inc.*, 123 F. Supp.2d 118 (S.D.N.Y. 2000) ........ 3

*N.Y.S. Elec. & Gas Corp. v. State of N.Y.*, 218 A.D.2d 868, 630 N.Y.S.2d 412
  (3d Dep't), *app. denied*, 87 N.Y.2d 803, 639 N.Y.S.2d 310 (1995) .............................. 6

*Natwest USA Credit Corp. v. Alco Standard Corp.*, 858 F. Supp. 401
  (S.D.N.Y. 1994) ............................................................................................................ 7

*NJP Enters. v. Shooze, Inc.*, 280 A.D.2d 533, 720 N.Y.S.2d 190 (2d Dep't 2001) ........... 6

*Ray Larsen Associates, Inc. v. Nikko America, Inc.*, 1996 U.S. Dist. LEXIS
  11163 (S.D.N.Y. Aug. 6, 1996) .................................................................................. 14

*Reuben H. Donnelley Corp. v. Mark I Marketing Corp.*, 893 F. Supp. 285
  (S.D.N.Y. 1995) .......................................................................................................... 14

*Ruttenberg v. Davidge Data Sys. Corp.*, 215 A.D.2d 191, 626 N.Y.S.2d 174
  (1st Dep't 1995) .......................................................................................................... 10

*Sayers v. Rochester Tel. Corp. Pension Plan*, 7 F.3d 1091 (2d Cir. 1993) ....................... 4

*Singer Asset Fin. Co. v. Melvin*, 33 A.D.3d 355, 822 N.Y.S.2d 68
  (1st Dep't 2006) .......................................................................................................... 13

*Tierney v. Capricorn Investors, L.P.*, 189 A.D.2d 629, 592 N.Y.S.2d 700
  (1st Dep't), *app. denied*, 81 N.Y.2d 710, 599 N.Y.S.2d 804 (1993) ......................... 13

*Vista Co. v. Columbia Pictures Indus., Inc.*, 725 F. Supp. 1286 (S.D.N.Y. 1989) .......... 14

*Waldman v. New Phone Dimensions, Inc.*, 109 A.D.2d 702, 487 N.Y.S.2d 702
  (1st Dep't), *app. dismissed*, 65 N.Y.2d 784 (1985) .................................................... 8

*Wolff v. Rare Medium, Inc.*, 210 F. Supp.2d 490 (S.D.N.Y. 2002), *aff'd*,
  65 Fed. Appx. 736 (2d Cir. 2003) ............................................................................... 12

## INTRODUCTION

Defendant Lester Nail, by his attorneys, Littler Mendelson, P.C., respectfully submits this reply memorandum of law in further support of his cross-motion for summary judgment and in opposition to Plaintiff PPI's motion for summary judgment.

PPI's motion papers are bereft of any legal authorities or facts supporting its erroneous interpretation of Mr. Nail's obligations under Section 7(c) of the Employment Agreement. Instead, PPI relies entirely on the subjective and conclusory arguments of its counsel, which are not only inconsistent with the Agreement's express terms but directly contradict the binding testimony of PPI's highest-level executives regarding the meaning and intent of the Agreement. In contrast, Mr. Nail has provided specific, undisputed facts and pertinent case law establishing that he complied with all obligations necessary to receive the full amount of termination pay provided for in Section 7(c). Accordingly, PPI's motion for summary judgment should be denied in its entirety, and Mr. Nail's cross-motion should be granted.

## ARGUMENT

### I. PPI CANNOT ESTABLISH A BREACH BY MR. NAIL

#### A. Mr. Nail Was "Willing, Ready and Able" to Provide Exclusive Services

PPI does not dispute that Section 7(c) of the Agreement is the only provision specifically addressing the parties' respective obligations in the event PPI terminated Mr. Nail's employment without cause. Under the express terms of Section 7(c), PPI remained obligated to compensate Mr. Nail until December 31, 2007, provided *only* that he be "willing, ready and able to render exclusive services" to PPI during that period. PPI has not established that Mr. Nail was unwilling, unready, or unable to provide such

services. To the contrary, the record evidence firmly establishes that Mr. Nail was at all times prepared to render, and capable of rendering, exclusive services to PPI if he had been called upon to do so.

### (1) The Undisputed Evidence Establishes That Mr. Nail Was Willing and Ready To Provide Services

Mr. Nail has provided ample evidence that he was "willing" and "ready" to render exclusive services to PPI at any time if he had been asked, and PPI has provided absolutely no evidence to the contrary. Although PPI's counsel speculates that Mr. Nail probably would not have been willing to cease his employment at Denny's (ignoring the facts that Mr. Nail was very unhappy there and had been forced to accept a lower-level, at-will position), such unsupported speculation is not evidence and cannot satisfy PPI's burden on summary judgment.

Nor does the skepticism of PPI's counsel in this regard create a genuine issue of fact for trial. Mr. Nail has provided uncontradicted testimony that he was at all times willing and ready to perform exclusive services for PPI if asked. PPI has provided no competent evidence to the contrary, and its subjective disbelief of Mr. Nail's sworn testimony is insufficient to defeat summary judgment. See, e.g., Harper v. United States, 949 F. Supp. 130, 132 (E.D.N.Y. 1996) ("[I]n response to a summary judgment motion, the nonmoving party must come forward with facts, and not merely doubts as to the veracity of the moving party's allegations."). Furthermore, PPI is not entitled to the benefit of any inferences regarding Mr. Nail's willingness to perform services because it never asked him to perform. Given that PPI never made a request for services, it should not be permitted to speculate regarding what Mr. Nail may or may not have been willing to do in response to such a request.

2

### (2) The Undisputed Evidence Establishes That Mr. Nail Was Able To Provide Services

Furthermore, Mr. Nail has provided ample evidence that he was "able" to render exclusive services to PPI during the entire period coincident to PPI's payment obligation. Contractual language must be ascribed its ordinary meaning. Muze, Inc. v. Digital On-Demand, Inc., 123 F. Supp.2d 118, 128 (S.D.N.Y. 2000). Here, the parties used the word "able," which Webster defines as "having sufficient power, skill, or resources to accomplish an object." See Merriam Webster's Collegiate Dictionary (10th ed.). PPI does not dispute that Mr. Nail had the power to permanently or temporarily cease working at Denny's *at any time* in the event he had been called upon to provide exclusive services for PPI. Because Mr. Nail had the ability to cease his Denny's employment at any time, for any reason, with no notice, then, *a fortiori*, he was "able" to provide exclusive services to PPI upon request. Moreover, he was able to do so "each and every day" through December 31, 2007.

PPI argues that Mr. Nail breached Section 7(c) the moment he accepted employment at Denny's, and that PPI's payment obligation thereunder was automatically and forever extinguished -- notwithstanding that Mr. Nail would have been able to perform in response to a demand for services by PPI. Thus, PPI is effectively asserting that Section 7(c) constitutes an absolute, blanket prohibition on re-employment. This purported interpretation finds no support in the Agreement, in logic, or in the law.

PPI's interpretation of Section 7(c) is not only inconsistent with that provision's express language, but directly contradicts PPI's own testimony regarding the meaning and intent of the provision's terms. It is axiomatic that the intent of the parties is ascertained by the language they chose to use. See, e.g., Consarc Corp. v. Marine

3

Midland Bank, 996 F.2d 568, 573 (2d Cir. 1993). Here, Section 7(c) does *not* state that Mr. Nail is prohibited from engaging in employment after his termination. If PPI had intended its payment obligation to automatically extinguish upon Mr. Nail's re-employment, it could have easily said so. For example, PPI could have written that its payment obligation continues "so long as Executive refrains from other employment," or that its payment obligation would extinguish if "Executive provides services to any other employer." Instead, PPI expressly stated that its obligation to provide termination pay depended only on whether Mr. Nail was "willing, ready and able" to render exclusive services, nothing more. It must be presumed that PPI deliberately chose to use those words rather than impose an unconditional prohibition on re-employment. See Sayers v. Rochester Tel. Corp. Pension Plan, 7 F.3d 1091, 1094 (2d Cir. 1993) (contract will be interpreted to give effect to intent of parties as revealed by language they used).

The plain meaning of the language employed demonstrates that this provision was intended to ensure that PPI could avail itself of Mr. Nail's services after his termination *in the event PPI needed them* (with the understanding that PPI was not contractually obligated to utilize such services). And although the Court need not look outside Section 7(c) itself to reach that conclusion, the intent of that provision was confirmed by PPI's current and former Chief Executive Officers, both of whom stated that the "willing, ready and able" language in Section 7(c) was intended to provide assurance that former executives would be available to provide services *if PPI requested them*, and not to restrict re-employment *per se*. (Kinzel Dep. at 59, 65-68; Nail Decl., ¶ 12.)

Significantly, and contrary to the position PPI now takes, both PPI's Chief Executive Officer and its Vice President of Administration (who had responsibility for

4

administering executive employment agreements) testified that Mr. Nail's mere re-employment did *not* automatically breach Section 7(c). Specifically, they stated that Mr. Nail's employment by Denny's would not necessarily have violated Section 7(c) if he had been willing, ready and able to cease such employment in response to a request for services by PPI (and the undisputed evidence demonstrates that he was). (Kinzel Dep. at 65-66; Freeman Dep. at 193.) The testimony of PPI's highest-level officers regarding the meaning and intent of this provision is binding on PPI, especially since that testimony is consistent with the provision's plain language and PPI has offered no competent evidence establishing a contrary intent. See, e.g., Jim Henson Productions, Inc. v. John T. Brady & Assocs., Inc., 16 F. Supp. 2d 259, 287 (S.D.N.Y. 1997); Geletucha v. 222 Delaware Corp., 7 A.D.2d 315, 317, 182 N.Y.S.2d 893, 895 (4th Dep't 1959).

In its motion papers, PPI asserts that, because it had no *obligation* to request Mr. Nail's services, Mr. Nail's actual ability to perform in response to such a request (which PPI does not dispute) is irrelevant. Rather, according to PPI, Mr. Nail's mere acceptance of other employment automatically and irrevocably breached Section 7(c) *even if he had been "willing, ready and able" to perform exclusive services for PPI upon request.* No legal authority is cited for this unusual proposition, and Defendant has not located any cases that remotely support it.

PPI is correct that it had no contractual obligation to request Mr. Nail's services. Mr. Nail has never contended otherwise. However, Mr. Nail's ability to perform exclusive services for PPI within the meaning of Section 7(c) cannot be assessed in a vacuum. It can only be assessed in the context of an actual or hypothetical request for performance, *i.e.*, would Mr. Nail have been "able" to perform such services *if* PPI had

asked him to do so. Indeed, it is well-recognized that a breach of contract cannot be established unless the plaintiff can show either (i) that the defendant failed to perform a contractual obligation when performance was demanded, or (ii) that the defendant committed a voluntary act that made it *impossible* for him to perform *if* performance had been demanded. See, e.g., Gardiner Int'l, Inc. v. J.W. Townsend & Assocs., Inc., 13 A.D.3d 246, 247, 788 N.Y.S.2d 312, 314 (1st Dep't 2004); NJP Enters. v. Shooze, Inc., 280 A.D.2d 533, 534, 720 N.Y.S.2d 190, 191 (2d Dep't 2001); N.Y.S. Elec. & Gas Corp. v. State of N.Y., 218 A.D.2d 868, 870, 630 N.Y.S.2d 412, 414 (3d Dep't), app. denied, 87 N.Y.2d 803, 639 N.Y.S.2d 310 (1995). Here, the record evidence establishes (and PPI does not dispute) that Mr. Nail would have been able to immediately cease his Denny's employment (on either a permanent or temporary basis) and perform exclusive services for PPI at any time if such performance had been demanded. The mere fact that PPI was not contractually obligated to utilize Mr. Nail's services after his termination is immaterial.

The nebulous standard proposed by PPI, which would completely disregard an individual's *actual ability* to perform in response to a demand, is illogical and would lead to absurd results. Under it, PPI's payment obligation would automatically extinguish if an individual engaged in *any* post-termination activity other than: (i) performing exclusive services for PPI; or (ii) idly standing by in the event a request for such services is made. For example, if Mr. Nail went grocery shopping on a weekday, PPI's payment obligation would automatically extinguish because he was not, at that moment, available to render services to PPI. Similarly, if Mr. Nail decided to sell magazine subscriptions from his home or work as a cashier at Home Depot, PPI's payment obligation would

automatically extinguish because he was not rendering exclusive services to PPI, notwithstanding that he could have done so at any time upon request. There is no basis for concluding that the parties intended such an absurd, draconian, and virtually unlimited restriction on post-termination activities, especially where the express contractual language simply required Mr. Nail to be "willing, ready and able" to provide exclusive services if called upon. See, e.g., Natwest USA Credit Corp. v. Alco Standard Corp., 858 F. Supp. 401, 413 (S.D.N.Y. 1994) (contract must be construed, if possible, to avoid interpretation that will result in absurdity or injustice).[1]

In sum, PPI cannot establish that Mr. Nail was not "willing, ready and able" within the meaning and intent of Section 7(c) of the Agreement. Therefore, PPI's own obligation to provide the agreed-upon termination pay was not excused, and its admitted failure to provide such pay constitutes a breach of contract by PPI as a matter of law.

**B.      Sections 5 and 11 of the Agreement Are Inapplicable Here**

PPI's contention that Sections 5 and 11 of the Agreement were intended to be read *in pari materia* with Section 7(c) -- the self-contained termination without cause provision -- is insupportable.

The *only* provision in the Agreement specifically addressing the parties' respective obligations in the event of a termination without cause is Section 7(c). Section 7(c) very clearly states that if Mr. Nail is terminated "other than for Cause" PPI is obligated to compensate him for the remainder of the contract term provided only that he

---

[1] The unreasonableness of PPI's interpretation can also be illustrated as follows: Suppose the Agreement provided that PPI was obligated to pay Mr. Nail so long as he is "willing, ready, and able" to deliver a horse to PPI. Although Mr. Nail does not own a horse carrier, his neighbor does, and Mr. Nail had the ability to utilize it at any time. It would be PPI's position that Mr. Nail's mere status of lacking a horse carrier automatically breached the Agreement, notwithstanding that he would have been "able" to immediately obtain one and perform his obligation to deliver a horse if PPI had asked him to do so.

7

is "willing, ready and able" to render exclusive services to PPI during that period. Section 7(c), by its terms, imposes no further obligations upon Mr. Nail and no other limitations on PPI's payment obligation. Indeed, PPI expressly states that its obligation to pay Mr. Nail is "subject to the terms of *this* paragraph 7(c)." Section 7(c) does not contain any reference to Sections 5 and 11 of the Agreement, which have nothing whatsoever to do with PPI's obligation to provide termination pay in the event of a termination without cause. Nor do Sections 5 and 11 make any express or implied reference to Section 7(c). Simply put, no reasonable party would interpret Section 7(c) -- which expressly and exclusively addresses obligations in the event of a termination without cause -- as incorporating other, more restrictive general provisions found elsewhere in the Agreement.

Moreover, PPI completely ignores the well-established rule of contract construction holding that where there are general and specific provisions in an agreement, the specific provisions control. General Elec. Co. v. Compagnie Euralair, 945 F. Supp. 527, 533 (S.D.N.Y. 1996), aff'd, 164 F.3d 617 (2d Cir. 1998); Loughman v. Unum Provident Corp., 536 F. Supp.2d 371, 376-77 (S.D.N.Y. 2008); Waldman v. New Phone Dimensions, Inc., 109 A.D.2d 702, 704, 487 N.Y.S.2d 702 (1st Dep't), app. dismissed, 65 N.Y.2d 784 (1985). Here, Section 7(c) specifically addresses the parties' obligations in the event of a termination without cause, and, absent any express reference to other provisions, it is presumed that the parties intended the specific terms of Section 7(c) to control. See id.

This rule of construction applies with even greater force where the general provisions are inconsistent with the specific. Id. See also Isaacs v. Westchester Wood

8

Works, Inc., 278 A.D.2d 184, 185, 718 N.Y.S.2d 338, 339 (1st Dep't 2000) (specific contractual clause is given precedence over arguably conflicting general clause); Bank of Tokyo-Mitsubishi, Ltd. v. Kvaerner, 243 A.D.2d 1, 8, 671 N.Y.S.2d 905, 910 (1st Dep't 1998) (same). Here, the obligations imposed by the general provisions (Sections 5 and 11) are inconsistent with the specific provision addressing terminations without cause (Section 7(c)). Section 7(c) expressly defines Mr. Nail's post-termination obligation as being "willing, ready and able" to render exclusive service to PPI, nothing more. Further, that obligation is not unconditional, in that Mr. Nail can elect not to comply without breaching the Agreement (*i.e.*, his noncompliance would simply extinguish PPI's obligation to provide termination pay going forward). In contrast, Sections 5 and 11 would unconditionally prohibit Mr. Nail from engaging in any occupation under any circumstances. By their terms, Mr. Nail would have *no* ability to "opt-out" of those restrictions without breaching the Agreement, and the restrictions are not subject to any reciprocal payment obligation on the part of PPI.[2]

As a matter of law, the more-restrictive, unconditional provisions of Sections 5 and 11 (which do not address or even refer to terminations without cause) do not trump the express terms of Section 7(c), the provision that the parties specifically intended to govern their obligations in the event of a termination without cause. See id. Moreover, application of Sections 5 and 11 under these circumstances would effectively nullify the parties' express agreement regarding such terminations, as specifically and exclusively set forth in Section 7(c). See LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 206 (2d Cir. 2005) (contract will not be interpreted in manner that will

---

[2] For these reasons, among others detailed in Defendant's moving brief, Sections 5 and 11 would not be enforceable under New York law subsequent to Mr. Nail's termination without cause.

9

render specific provision a nullity); Ruttenberg v. Davidge Data Sys. Corp., 215 A.D.2d 191, 196, 626 N.Y.S.2d 174, 177 (1st Dep't 1995) (same).

PPI argues that the restrictions of Sections 5 and 11 are nonetheless applicable because Mr. Nail's *entire* Employment Agreement remained in full effect after PPI terminated his employment without cause. However, there is no evidence that the parties intended the Agreement to remain fully intact after a termination without cause. To the contrary, the parties expressly agreed that their obligations would be limited to those set forth in Section 7(c), the provision governing such terminations. The fallacy of PPI's position is easily demonstrated. For example:

- In Section 1 of the Agreement, PPI agreed that it "shall employ" Mr. Nail through December 31, 2007. Notwithstanding that provision, PPI terminated Mr. Nail's employment on August 1, 2006. If, as PPI contends, all provisions of the Agreement remained intact and individually enforceable without regard to Section 7(c), then PPI's failure to employ Mr. Nail for the entire term would constitute a separate, actionable breach by PPI.

- In Section 2(b) of the Agreement, PPI agreed that Mr. Nail would annually be considered for bonus compensation. Notwithstanding that provision, PPI never considered Mr. Nail for such compensation after it terminated his employment on August 1, 2006. If, as PPI contends, all provisions of the Agreement remained intact and individually enforceable without regard to Section 7(c), then PPI's failure to consider Mr. Nail for bonuses would constitute a separate, actionable breach by PPI.

- In Section 2(c) of the Agreement, PPI agreed that Mr. Nail would annually be considered for stock option awards. Notwithstanding that provision, PPI never

considered Mr. Nail for such awards after it terminated his employment on August 1, 2006. If, as PPI contends, all provisions of the Agreement remained intact and individually enforceable without regard to Section 7(c), then PPI's failure to consider Mr. Nail for stock options would constitute a separate, actionable breach by PPI.

- In Section 4 of the Agreement, PPI promised that Mr. Nail would be entitled to vacation in accordance with company policies. However, PPI did not provide Mr. Nail with any vacation or vacation pay after it terminated his employment on August 1, 2006. If, as PPI contends, all provisions of the Agreement remained intact and individually enforceable without regard to Section 7(c), then PPI's failure to provide Mr. Nail with vacation would constitute a separate, actionable breach by PPI.

Of course, PPI would never agree that it had any obligation to comply with those provisions after Mr. Nail's employment was terminated. Rather, it would assert (and has asserted) that its obligations are limited to those expressly stated in Section 7(c) governing terminations without cause. Likewise, Mr. Nail's obligations after his termination without cause are limited to those expressly stated in Section 7(c). PPI's contention that Mr. Nail continued to be bound by the entire Agreement after he was involuntarily terminated without cause, while PPI was freed from all obligations other than those stated in Section 7(c), is audacious, legally insupportable, and contrary to the parties' expressed intentions.[3]

In sum, Section 7(c) represents the parties' complete and specific agreement regarding their obligations in the event Mr. Nail was terminated without cause. PPI has

---

[3] As detailed in Defendant's initial moving papers, PPI's contention that the entire Agreement remained in effect after Mr. Nail's termination without cause is also belied by the fact that PPI made a distinction between "administrative leave" and outright employment termination. Only individuals placed on administrative leave were deemed employees whose employment agreements remained in full effect, and Mr. Nail was not one of those individuals.

11

not demonstrated that Sections 5 and 11 -- general provisions that did not refer to terminations without cause and that were inconsistent with the specific terms of Section 7(c) -- were intended to have any application under these circumstances. To the contrary, PPI's assertion that its own contractual duties were extinguished except as set forth in Section 7(c) conclusively establishes that Section 7(c) was intended to exclusively control the parties' obligations after a termination without cause. Because the undisputed facts establish that Mr. Nail complied with his obligations under Section 7(c), PPI's motion for summary judgment should be denied, and Mr. Nail's cross-motion should be granted.

## II.  PPI's CLAIM FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING SHOULD BE DISMISSED AS A MATTER OF LAW

The duty of good faith and fair dealing is an implied contract term and has no independent existence outside of the contract. Harris v. Provident Life and Acc. Ins. Co., 310 F.3d 73, 80 (2d Cir. 2002); Wolff v. Rare Medium, Inc., 210 F. Supp.2d 490, 497 (S.D.N.Y. 2002), aff'd, 65 Fed. Appx. 736 (2d Cir. 2003). Further, the duty of good faith and fair dealing does not create obligations that go beyond those intended by the contract. See Broder v. Cablevision Sys. Corp., 418 F.3d 187, 198-99 (2d Cir. 2005).

Here, PPI contends that Mr. Nail breached that duty by failing to notify PPI that he was employed by Denny's, and that PPI was thereby deprived of an opportunity to earlier discontinue Mr. Nail's termination pay. However, because Mr. Nail's employment by Denny's did not constitute a breach of contract, PPI would have been obligated to continuing providing termination pay even if it had been immediately notified of such employment. Thus, PPI was not deprived of any contractual benefit as a result of Mr. Nail's alleged failure to notify. As stated, Mr. Nail's employment by

12

Denny's either breached the Agreement or it did not. If it did not, then Mr. Nail had no implied contractual duty to notify PPI.

### III. PPI'S QUASI-CONTRACT CLAIM FOR "UNJUST ENRICHMENT" SHOULD BE DISMISSED AS A MATTER OF LAW

PPI deliberately disregards well-settled law by continuing to pursue an "unjust enrichment" claim despite the admitted existence of a contract explicitly governing the specific subject matter for which an implied agreement is sought. See, e.g., Adelaide Productions, Inc. v. BKN Int'l, A.G., 38 A.D.3d 221, 225, 834 N.Y.S.2d 3, 7 (1st Dep't 2007) (the existence of a contract precludes an unjust enrichment cause of action); Singer Asset Fin. Co. v. Melvin, 33 A.D.3d 355, 358, 822 N.Y.S.2d 68, 71 (1st Dep't 2006) (same); Cooper, Baumdo, Hecht & Longworth, LLP v. Kuczinski, 14 A.D.3d 644, 645, 789 N.Y.S.2d 508, 510 (2d Dep't 2005) (same). Mr. Nail's entitlement to termination pay is expressly governed by Section 7(c) of the Agreement, and Mr. Nail does not contend that that provision is "unenforceable". Therefore, as a matter of law, no action in quasi-contract for unjust enrichment can be maintained. See id. See also Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield, 448 F.3d 573, 586-87 (2d Cir. 2006).

### IV. PPI's FRAUD CLAIM SHOULD BE DISMISSED AS A MATTER OF LAW

Again ignoring established law, PPI asserts that it is entitled to maintain a common law fraud claim, despite the fact that all of the alleged fraudulent conduct relates directly to its breach of contract cause of action. Under New York law, "[a] cause of action for fraud does not arise when the only fraud charged relates to a breach of contract." Tierney v. Capricorn Investors, L.P., 189 A.D.2d 629, 671-72, 592 N.Y.S.2d 700, 703 (1st Dep't), app. denied, 81 N.Y.2d 710, 599 N.Y.S.2d 804 (1993).

Furthermore, allegations that a party attempted to conceal his breach of contract are insufficient as a matter of law to support a claim for fraud. See Vista Co. v. Columbia Pictures Indus., Inc., 725 F. Supp. 1286, 1294 (S.D.N.Y. 1989) ("The inclusion of allegations of intent and/or concealment in the complaint does not change the nature of the action ... from an action upon contract to an action upon fraud.").

Here, all PPI has alleged is that Mr. Nail engaged in various actions designed to conceal his purported breach of the Agreement. PPI does not claim that it incurred any damages as a result of the alleged "fraud," other than the monies it would recover if it were able to establish a breach of contract. Thus, as a matter of law, PPI's allegations are insufficient to sustain a cause of action for fraud. Reuben H. Donnelley Corp. v. Mark I Marketing Corp., 893 F. Supp. 285, 290 (S.D.N.Y. 1995) ("[A]lleged concealment of a breach is insufficient to transform what would normally be a breach of contract action into one for fraud."); Ray Larsen Associates, Inc. v. Nikko America, Inc., 1996 U.S. Dist. LEXIS 11163, *15 (S.D.N.Y. Aug. 6, 1996) (same); Fisher v. Big Squeeze, Inc., 349 F. Supp.2d 483, 489 (E.D.N.Y. 2004) (same).

## CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that the Court issue an order: (i) denying PPI's motion for summary judgment in all respects; (ii) granting Defendant's cross-motion in its entirety and dismissing the Complaint with prejudice, and awarding Defendant summary judgment on his breach of contract counterclaim; and (iii) awarding Defendant his reasonable costs and attorneys' fees, as well as such other or further relief as the Court deems appropriate.

Dated: New York, New York  
       August 14, 2008

Respectfully submitted,

LITTLER MENDELSON, P.C.

By: _____S/_____  
A. Michael Weber (AW-8760)  
Michael P. Pappas (MP-6716)